*Coouey, Ch. J.:
The present suit is one for the recovery of tolls for crossing the plaintiff’s bridge over the Grand river at Grand Rapids. The plaintiff is a corporation organized in 1851 for the period of thirty years. The purpose of the organization was to build the bridge in question; hut as the river at this point was a navigable stream, the assent of the supervisors of the county was essential before the bridge could he constructed.— Gomp. L. 1871, § 26Jfi. The same board was also by law the competent *380 authority to fix the tolls. The assent was given by resolution of the board dated January 17, 1852, “to erect, rebuild, repair and keep up and use, for the sole use and profit of said company, a toll-bridge, * * for the term of twenty years;” and the tolls were fixed at the same time. The bridge was duly constructed and tolls collected of passengers for the term of this permission, but after the twenty years had expired, the defendant refused any fonger to pay tolls, and passed over the bridge repeatedly .without doing so. The plaintiff, claiming the right to continue to exact tolls according to the established rates, has brought this suit.
The questions which have been argued are exclusively questions of law.
I. It is first claimed that as the law authorized the organization of the corporation for the purpose of constructing the bridge subject only to the assent of the supervisors, but with a corporate life extending to thirty years, the assent of the board to the construction was in law of necessity an assent for the full period of thirty years, and could not be restricted by the board to any shorter term. We are referred to no authority which countenances this view, and we think it not'maintainable. If the statute under which the company had been organized had contemplated the necessary existence of the company for the purposes of its organization for the full period of thirty years, and there had been apparent in it a policy that the franchise of taking tolls *should be one of that duration, the argument would have had some force. But the statute exj>ressly permitted corporations to be organized for any period not exceeding thirty years, and a bridge company for five years is as much within the policy of the statute as one for thirty. Had the plaintiff been organized for twenty years only, the question here considered could scarcely have been raised; and it cannot be doubted that the board might in advance have negotiated with the parties proposing to form a corporation, and required of them, as a condition of assent to the building of the bridge, that the corporate life should be limited to any number of years specified. There might be reasons in the growing business of the place *381 and of the river which would seem to require such a limitation; and the authority conferred upon thé local board to give or withhold assent would lose very much of its value if it were confined within unvarying limits. It is not unreasonable to suppose that consent might sometimes be withheld under such circumstances when otherwise it would not be.
But if the supervisors could bargain for a limitation of time before the corporate organization, so they could afterwards. The plaintiff by the organization only acquired corporate powers; it gained nothing that was originally within the control of the supervisors. That board was bound by nothing that so far had been done. The members of the board may not in any manner have become aware of the steps to organize until application was made to them for permission to construct the bridge, and they were at liberty to act on such public considerations as were then presented, and with no more concession of privilege than they supposed the public interest to require. They might have consented for five years, leaving a future board at the end of that time to consent, or refuse to consent, according as the public good would appear to be consulted by the one course or by the other. On this part of the case there does not appear to us to be any serious question.
II. It is next insisted on the part of the plaintiff, that *the corporate powers which it claims and which the state does not contest and inquire into by proceedings in the nature of a quo warranto, cannot be attacked in this collateral way and contested in a private suit; and this point, as we understand it, is the one principally relied upon.
It is certainly true that in many cases when a body of persons are found to be exercising corporate powers under color of law, and with the implied acquiescence of the sovereignty, an individual has not been allowed to dispute the corporate existence. It is held in those cases, and as we think very properly and justly, that the question whether a franchise claimed under sovereign grant is or is not rightfully exercised under such circumstances, should be left to be raised by the state itself in a direct proceeding for the purpose. The case of Smith v. Sheeley, 12 Wall., 358, lays down very satisfactory *382 doctrine on this subject, and the views there expressed are in harmony with those declared by this court in Swartwout v. The Air Line Railroad Co., 24 Mich., 389.
It is also true, that in cases almost innumerable, it has been decided that the forfeiture of a corporate - franchise cannot be collaterally taken advantage of in a private action. The doctrine is as old as the year books, and at this late day one would scarcely be listened to who should venture to* question it. We shall not assume that it is in any manner open to controversy.
But the question here in issue is not a question of corporate existence, or a question of forfeiture. The defense may be perfectly valid, and still the corporate existence be untouched. The corporation was brought into existence by the original organization, and existed before the franchise of taking tolls accrued to it by the action of the board of supervisors. That franchise was an additional privilege to those which the organization gave; it was in the nature of a grant which the organization only clothed the corporation with the capacity to receive. The grant may cease and the corporate existence remain untouched. It is said in Viner (*Prerogative, Y c, pi. 19), that “the franchise, etc., of a body politic may be seized or surrendered, etc., and the body itself remain untouched, as appears in the Bishop of Norwich’s case, and more clearly in the same case after in Jones, Fuichard and Haywood's case; for franchises, etc., are not essential to a corporation, but a privilege pertaining to it.” That is to say, the franchise to be a corporation may exist and remain, though any particular franchise annexed to it may have been surrendered or forfeited. To question the existence of such annexed franchise, does not therefore of necessity question the existence of the corporation.
But it has been intimated in several cases, that when a corporation is brought to an end by lapse of time, any further exercise of corporate powers may be questioned collaterally.— People v. Manhattan Co., 9 Wend., 351, 382, per Sutherland, J.; Morgan v. Lawrenceburg Ins. Co., 3 Ind., 285, per Blackford, J.; Wilson v. Tesson, 12 Ind., 285, per Perkins, J. The limitations upon this doctrine we do not care to discuss, nor do we *383 need to consider the doctrine advanced by Judge Cowen, in People v. Bristol, etc., Turnpike Co., 23 Wend., 222, 243, that when the people proceed against a corporation for a cause of forfeiture of the right to take tolls, all the corporate franchises should be forfeited.. The learned judge in the same case cites authorities showing that such is not a necessary result. “ A corporation,” he says, “ may be created with all the incidental powers of such a body, powers to elect officers, use a common seal, collect tolls, etc., being an entire and indivisible body in itself, a franchise which must stand or fall with any one of its powers (vid. Palmer, 82), and after having been administered for many years a particular franchise may be added. The latter being forfeited, there may then arise a question whether it be not so obviously distinct, that it may be cut away by information, without impairing the main body. This it seems
may be done. In Rex v. Gregory, 4 T. R., 240, 242, note a, Lord Mansfield said, ‘ every ^college is a corporation in itself; and altogether they form one corporation in the university in gross.’ In The City of London v. Vanacre, 12 Mod., 270, it appeared that long after the city had been incorporated, King John granted to it the Shrievewick of Middlesex, etc., by letters patent. This was a distinct franchise, the neglect or abuse of which might result in a forfeiture of that alone; and the remarks of Holt, Ch. J., at p. 271, keep this idea in view. Again in Sir James Smith's case, he is speaking of usurpation of a liberty, and he says there may be a seizure of a liberty which will not warrant either the seizure or dissolving of the corporation itself.” — Ibid., p. 238.
In this case, as we have already said, there is no question of forfeiture, but there is a question of the continued existence of the franchise to take tolls. That franchise was distinct from the corporate franchise, and came into existence by grant, not directly from the state, but from the local board. The estate of the corporation in it was expressly limited to twenty years; and when that period came to an end, the estate ceased also. There was no longer color of law for taking toils; and the failure of the state to institute proceedings could no more continue the franchise or restore it to life than the like failure *384 in the case of one who should erect a gate across a common highway and levy like tolls. When the twenty years expired the defendant had a right to refuse to pay any longer, ¿Ind every other person had the like right. If all others acquiesced, their action could not bind the one who refused.
If it were necessary, attention might be called to one circumstance which distinguishes this ease from others in which acquiescence by the state has been held to he a waiver. In those oases the franchise acquiesced in was one proceeding from the state itself; in this case the franchise in dispute is one which only theoretically proceeds from the state. The hoard of supervisors confer it, and the hoard of supervisors is not the authority which in the name of the people could institute proceedings to question its existence. What *difference, if any, this should make on a question of forfeiture, we do not undertake to say, as in this case it is of no moment. A waiver cannot renew an estate which has expired by limitation.
The judgment must he reversed, and judgment entered for defendant, with costs of both courts.
. The other justices concurred.