[No. 4786. Decided December 17, 1903.]

THE STATE OF WASHINGTON, on the Relation of Robert Morrell, v. SUPERIOR COURT FOR STEVENS COUNTY, Respondent.[1]

CORPORATIONS—POWERS—CONSTRUCTION OF ARTICLES—WATER RIGHTS OF MINING COMPANY. Where the articles of a mining company provide for carrying on many kinds of business including the acquiring of "water rights" and other appliances, all of which seem to center around the main object of mining and smelting ores, the words "water rights" have reference to some mechanical application thereof, and do not indicate an intention to form a water company for the purpose of supplying cities with pure fresh water, or authorize the company to acquire property by the right of eminent domain.

EMINENT DOMAIN—NOT EXERCISED BY ALIENS—OBJECTION RAISED BY OWNER OF LAND. Where land is sought to be appropriated under the right of eminent domain, the objection that the plaintiff is an alien and so not entitled to hold land in this state may be raised by the owner of the land in defense of his title, without waiting for action on the part of the state through its special officers.

ALIENS — FOREIGN CORPORATIONS — OWNERSHIP OF LAND. Bal. Code, § 4291, granting to foreign corporations all the powers of domestic corporations can not be urged as giving them the power to hold lands in this state in view of the constitutional inhibition against such ownership.

[1]Reported in 74 Pac. 686.

SAME—RIGHT OF WAY FOR WATER FLUME. The constitutional inhibition against the ownership of lands by corporations, the majority of whose stock is held by aliens, applies to the acquisition of a right of way for a water flume under the condemnation laws of the state.

Certiorari to review a judgment of the superior court for Stevens county, Richardson, J., in favor of the Northport Smelting & Refining Company, entered July 13, 1903, upon a trial before the court and an assessment of damages by a jury, appropriating a right of way across the lands of the relator. Reversed.

*Post, Avery & Higgins,* and *J. A. Kellogg,* for relator.

*Voorhees & Voorhees,* and *E. M. Heyburn,* for respondent. To the point that a condemnation for a public use is for the benefit, and in trust for the use, of the state, and therefore not within the constitutional inhibition against ownership by aliens, counsel cited: *Amoskeag Mfg. Co. v. Worcester,* 60 N. H. 522; *Gilmer v. Lime Point,* 18 Cal. 252.

DUNBAR, J.—The Northport Smelting & Refining Company a foreign corporation, is operating a smelter in the city of Northport, Washington. It made application under its asserted right to eminent domain to condemn certain lands of the relator, defendant in that action, for the purpose of conducting water across the relator's land to its smelter. The amended petition alleged, in addition to the allegations in the first petition in relation to the necessities of the smelter, that the corporation was also furnishing water to the city of Northport. The defendant's answer admitted that said corporation "was furnishing incidentally to said town of Northport a comparatively insignificant portion of the water used from said Deep Creek," the source from which the water is sought to be taken.

The defendant demanded of the plaintiff that it furnish answers to certain interrogatories, among which was the following: "Please state which, if any, of the owners or holders of the stock of said corporation is an alien; and, if any of the stock of said corporation is owned or held for another person or corporation, please state whether the person or corporation for whom the same is held is an alien, and how much stock is so held." The plaintiff refused to answer these interrogatories, and the defendant, among other things, incorporated in its answer the allegation that the plaintiff did not have a right to condemn land or exercise the right of eminent domain, and that the capital stock of the plaintiff, and each and every share thereof, was owned by aliens, and that no part of the lands sought to be condemned contained valuable deposits of mineral, metals, iron, coal, or fire clay, nor was necessary for mills or machinery to be used in the development of lands of the above character, or for the manufacture of the products therefrom.

The defendant asked the court for judgment on the pleadings for the reason that the plaintiff refused to answer the interrogatories in relation to the stockholders being aliens. This motion was denied, and a demurrer was interposed to the affirmative matter in the answer in that regard, which was sustained by the court. A jury was called to assess the damages, judgment of condemnation was entered, and this writ of review has been sued out to question such judgment, and to review the errors of the court alleged to have been committed in the proceeding.

The articles of incorporation, which were exhibited in this case, are not sufficient, in our judgment, to constitute the plaintiff a water company within the meaning of § 4278, Bal. Code; which provides that "such water companies, incorporated for the purposes specified in the pre-

ceding section, shall have the right to purchase or take possession of, and use and hold, such lands and waters for the purposes of the company, lying without the limits of the city or town intended to be supplied with water, upon making compensation therefor." The preceding section referred to is as follows:

"The provisions of this charter shall extend to and apply to all associations already formed under any law of this state [or] hereafter to be formed under the provisions of this act for the purpose of supplying any cities or towns in this state or the inhabitants thereof with pure, fresh water."

The articles of incorporation are too long to set forth in this opinion, but a careful study of them convinces us that, while they provide for carrying on many kinds of business, the statement—that the purposes for which the corporation is formed are the acquiring, purchasing, leasing, owning, and operating of lands, mines, mining claims, water rights, smelters, reduction works, mills, machinery, electric, water and steam power plants, and all conduits and means of using and applying the same in any manner and at any place, and to do all and everything in connection with the acquiring, construction, owning, using, and enjoyment of smelter, mills, mines, water rights, power sources, power plants, and means and appliances used in connection therewith, the purchasing of and working ores, minerals, and metals by smelting, milling, or other process, and the carrying on of the general business of purchasing, treating, smelting, refining, or the reduction of ores by any process, either as owners of said ores or under contract for the treatment of the same or for hire—does not indicate an intention to form a water company for the purpose of supplying cities or towns, or the citizens thereof, with pure and fresh water; but that the words "water rights," like the other words used in the articles, have reference to some

mechanical application; and while this statement is ampli-
fied somewhat in succeeding sections, the amplifications,
like the section quoted, center around and apply to the evi-
dent main object of the incorporation.

The question as to whether or not a corporation has a
right to condemn land for the purpose of aiding in operat-
ing a smelter, on the theory that the operation of the smelter
is for public use, has been decided adversely to the con-
tention of the respondent in *Healy Lumber Co. v. Morris,*
recently decided (ante, p. 490).

At the threshold of this case, however, there is a ques-
tion the proper determination of which we think is fatal to
respondent's contention.   The court proceeded upon the
theory that the defendant did not have the right to raise
the constitutional question as to the ownership of lands by
aliens.   § 33 of art. 2 of the constitution provides, that the
ownership of lands by aliens, other than those who in good
faith have declared their intention to become citizens of
the United States, is prohibited in this state, except where
acquired by inheritance, under mortgage, or in good faith
in the ordinary course of justice in the collection of debts;
and that all conveyances of lands hereafter made to any
alien, directly or in trust for such alien, shall be void; with
a proviso that the provisions of such sections shall not
apply to lands containing valuable deposits of minerals,
metals, iron, coal, or fire clay.

In this we think the court erred.   It is true that, in the
case of *Oregon Mortgage Co. v. Carstens,* 16 Wash. 165,
47 Pac. 421, 35 L. R. A. 841, it was decided in this state,
by a divided court, that, where a mortgagor had deeded
the lands to the alien mortgagee before foreclosure of suit,
no one but the state could raise the question that the land
was deeded to an alien in violation of the constitutional
provision just above referred to.   That portion of the de-

cision, however, was only incidental and really unnecessary; for the court held that, in effect, the proceeding was the collection of a debt in the ordinary course of justice, and that the deed of land prior to the foreclosure of the mortgage was simply in the interest of saving the costs of foreclosure and the liability to a deficiency judgment upon the part of the mortgagor. This case was followed in *Goon Gan v. Richardson,* 16 Wash. 373, 47 Pac. 672, which was also a mortgage case, where the announcement was made, as in the other case, that it was not competent for the appellant to show that the mortgagee was incapable of taking title to real estate, because that could only be shown in a suit by the state.

But whatever may be said of the soundness of the doctrine there enunciated, those cases are easily distinguished from the case at bar, where the defendant is not questioning the right of the alien plaintiff to hold real estate, but is questioning its right to take real estate that belongs to the defendant; and, whatever questions of public policy might intervene to prevent alleged aliens from being annoyed at the instance of impertinent or spiteful citizens, such policy could not be applied to a citizen who is defending the title to and possession of his own land. The right of eminent domain is not a right belonging to individuals or corporations, but is only conferred by special enactment; and, before a plaintiff should be allowed to absorb the property of another by condemnation, it is not asking too much of him that he affirmatively show that he is authorized by the law to condemn land at all. It would certainly seem that a citizen has a right to protest against the taking away of his private rights by one without authorization, when such rights are imperiled, without awaiting the action of the state through its special officers. He is invoking the laws of the state in aid of his rights, and it can make no sub-

stantial difference whether the machinery of the law is put in operation by himself or by an agent of the government. To sustain this contention relator cites *Case v. Kelly,* 133 U. S. 21, 10 Sup. Ct. 216, 33 L. Ed. 513; *Zanesville v. Zanesville Gas-Light Co.* (Ohio), 23 N. E. 55; *New Orleans Gas-Light Co. v. Louisiana Light etc. Co.,* 11 Fed. 277; *Grand Rapids Bridge Co. v. Prange,* 35 Mich. 400, 24 Am. Rep. 585; *Salmon River M. & S. Co. v. Dunn* (Idaho), 3 Pac. 911; *South & N. A. R. Co. v. Highland Ave. etc. R. Co.,* 119 Ala. 105, 24 South. 114.

It is contended by the respondent that these cases do not apply, that they can be distinguished from' the case in question, and that they are not cases in regard to the condemnation of land. An examination of these cases satisfies us that they each apply, with the exception of *Salmon River etc. Co. v. Dunn, supra,* and that, while but one of them has reference to condemnation cases, the principle applied by the courts would be equally appropriate in a condemnation case.

In *Case v. Kelly, supra,* the language of Justice MILLER is very appropriate when he says:

"We need not stop here to inquire whether this company can hold title to lands which it is impliedly forbidden to do by its charter, because the case before us is not one in which the title to the lands in question has ever been vested in the railroad company, or attempted to be so vested. The railroad company is plaintiff in this action, and is seeking to obtain the title to such lands. It has no authority by the statute to receive such title, and to own such lands; and the question here is, not whether the court would deprive it of such lands, if they had been conveyed to it, but whether they will aid it to violate the law, and obtain a title which it has no power to hold. We think the questions are very different ones, and that, while a court might hesitate to declare the title to lands received already, and in the possession and ownership of the company, void, on the prin-

ciple that they had no authority to take such lands, it is very clear that it will not make itself the active agent, in behalf of the company, in violating the law, and enabling the company to do that which the law forbids."

In *Zanesville v. Zanesville Gas-Light Co., supra,* where the right of the corporation was questioned by the defendant, the court said:

"It is open, at all times, to the person against whom a corporation may claim the right to exercise a power, to call the power in question,  .  .  ."

In *New Orleans Gas-Light Co. v. Louisiana Light etc. Co., supra,* where the question was whether the plaintiff corporation could legally exist under the laws, in an action brought by it, it was held that, where defendants are sued on rights depending upon the corporate capacity of the complainant, such corporate rights might be attacked as a means of defending the suit.

In *Grand Rapids Bridge Co. v. Prange, supra,* in an opinion written by Judge Cooley, C. J., it was held that, while the forfeiture of a corporate franchise could not collaterally be taken advantage of in a private action, yet one sued by a corporation could raise the question of the rights of the corporation, although he could not raise the question of the corporate existence of the corporation. It will be observed in this case that the defendant did not attack the corporate existence of the plaintiff, so far as this question was concerned, but it attacked the right of a corporation to condemn lands, a majority of whose stockholders were aliens. It does not assume to raise any question of defendant's capability to do business under its charter.

In *South & N. A. R. Co. v. Highland Avenue etc. R. Co., supra,* the right of condemnation of a street railway company is discussed, and it is held that an interested individual may contest the claim of a corporation where it

seeks the aid of a court to perfect title to real property, distinguishing it from a case where a deed has been executed and delivered to the corporation. In the absence of authority, and on principles of common justice, we should hold that the defendant had a right to question the right of the condemning party to appropriate his land.

It is said, however, by the respondent, that under the provisions of § 4291, Bal. Code, any corporation incorporated under the laws of any state or territory in the United States, or in any foreign state or country, for any purpose for which a domestic corporation is authorized to be formed under the laws of this state, shall have power to do any and every act which a domestic corporation may do, on complying with the conditions prescribed under the statute, which conditions were complied with in the case at bar. But it certainly will not be contended that any statute could remove the constitutional inhibition providing that the ownership of lands by aliens is prohibited in this state and especially providing that every corporation, the majority of the capital stock of which is owned by aliens, shall be considered an alien for the purpose of this prohibition. So that a statutory argument is entirely without force.

It is also contended by the respondent that this is not such an ownership of land as is contemplated by the constitution, that the right of way sought to be condemned might be abandoned, and that the tenure of the corporation is uncertain. But it seems to us that, under the condemnation laws of the state, the substantial right to the land passes to the corporation; and, so far as duration is concerned, we held in State ex rel. Winston v. Morrison, 18 Wash. 664, 52 Pac. 228, that a lease for a term of ninety-nine years was void under the constitutional provision above referred to, and that it did not refer to absolute own-

ership; also, in *State ex rel. Winston v. Hudson Land Co.,* 19 Wash. 85, 52 Pac. 574, 40 L. R. A. 430, that, under the constitutional provision prohibiting alien ownership of lands, a lease of lands to an alien for the period of forty-nine years was void; and that the constitutional provision would not be construed away to such an extent that aliens could become owners of lands under any circumstances other than the circumstances incorporated in the proviso in the constitution itself.

The motion for judgment on the pleadings should have been granted, and the cause will be reversed, and remanded with instructions to the lower court to grant said motion as asked for. It will be time to adjudicate other propositions involved in the case when they are presented by a plaintiff showing the right to ask for such relief.

FULLERTON, C. J., and MOUNT, HADLEY, and ANDERS, JJ., concur.