[No. 6162.  Decided January 15, 1907.]

ROBERT ABRAMS, *Appellant*, v. THE STATE OF WASHINGTON
*et al., Appellants*, and R. V. ANKENY, *as Administrator,*
*etc. et al., Respondents.*[1]

ALIENS—TITLE TO ·REAL ESTATE.  One who conveys land to an alien has no right to the property on the theory that the deed is void, under Const., art. 2, § 33, so declaring, since the deed is void as against the state only, which alone can raise objection to the alien ownership of real property.

SAME—ESTOPPEL.  A deed to an alien estops the grantor from claiming an interest in the land, where he received the consideration and made no claim during the life of the grantee while valuable improvements were being made thereon.

SAME—DESCENT—RIGHT TO TRANSMIT AND TAKE BY INHERITANCE. Under statutes 11 and 12, Will. III, ch. 6, modifying the common law of England so as to enable English subjects to inherit from an alien, and which is a part of our common law, and under our constitution giving an alien a right to take title by inheritance, no disability exists in an alien to transmit title by inheritance, and aliens may receive title by inheritance from an alien (DUNBAR and ROOT, ·JJ., dissenting).

SAME—ESCHEAT—LOSS OF STATE'S RIGHTS.  The state loses its right to escheat lands held by an alien contrary to the provisions of the constitution, by failing to institute proceedings therefor during the lifetime of the alien owner (DUNBAR and ROOT, JJ., dissenting).

[1]Reported in 88 Pac. 327.

Appeals from a judgment of the superior court for King county, Yakey, J., entered January 15, 1906, upon findings in favor of the defendants, after a trial before the court without a jury, in an action to recover possession and quiet title to real estate. Affirmed.

*Will H. Thompson, Victor E. Palmer,* and *G. Ward Kemp,* for appellant Abrams. Lou Graham's ownership of the land was prohibited and the conveyance to her was void. Constitution, art. 11, § 33; *State ex rel. Winston v. Morrison,* 18 Wash. 664, 52 Pac. 228; *State ex rel. Winston v. Hudson Land Co.,* 19 Wash. 85, 52 Pac. 574, 40 L. R. A. 430; *State ex rel. Morrell v. Superior Court,* 33 Wash. 542, 74 Pac. 686. The court should have rendered judgment for the plaintiff on the pleadings, setting up the illegality of the conveyance. *Jordan v. Coulter,* 30 Wash. 116, 70 Pac. 257; *Lawrence v. Halverson,* 41 Wash. 534, 83 Pac. 889. Any form of transfer made in violation of law is absolutely void, the title remains in the grantor unaffected, and he is not estopped from defending his title or recovering possession. 2 Devlin, Deeds, § 1275; Bigelow, Estoppel (5th ed.), pp. 349, 351; *James v. Wilder,* 25 Minn. 305; *Doe v. Hays,* 1 Ind. 247; *Pells v. Webquish,* 129 Mass. 469; *Laidley v. Central Land Co.,* 30 W. Va. 505, 4 S. E. 705; *Central Land Co. v. Laidley,* 32 W. Va. 134, 9 S. E. 61, 25 Am. St. 797, 3 L. R. A. 826; *Lowell v. Daniels,* 2 Gray 161, 61 Am. Dec. 448; *In Re Comstock & Co.,* 3 Sawyer 218; *Carroll v. East St. Louis,* 67 Ill. 568, 16 Am. Rep. 632; *Wunderle v. Wunderle,* 144 Ill. 40, 33 N. E. 195, 19 L. R. A. 84; *Prosser v. Finn,* 41 Wash. 604, 84 Pac. 404. Covenants of warranty do not estop any man from defending his title against claims made under an instrument prohibited by law. *Doe v. Hays,* 1 Ind. 247; *Laidley v. Central Land Co.,* and *Lowell v. Daniels, supra.* Lou Graham was an alien when the form of deed was made, and the writing being void and illegal when signed, could not be validated by any subsequent declaration of intention to

become a citizen. *Leary v. Leary,* 50 How. Pr. 122; *Mick v. Mick,* 10 Wend. 379; *Priest v. Cummings,* 20 Wend. 338; *Pilla v. German School Ass'n,* 23 Fed. 700; *Sullivan v. Burnett,* 105 U. S. 334, 26 L. Ed. 1124; *Wunderle v. Wunderle, supra; Farrell v. Enright,* 12 Cal. 450; *Townsley v. Chapin,* 12 Allen 476. Lou Graham committed perjury in attempting to make a declaration of intention to become a citizen under an assumed and fictitious name (Rev. Stat., §§ 5424, 5429); and no right could grow from such wrongful action. *Ex dolo malo non oritur actio.* 11 Bouv. Dic. 179. She was a constant law-breaker of such immoral character that she could not make a valid declaration. Rev. Stat., § 2165; *In Re Sauer,* 81 Fed. 355; *In Re Bodek,* 63 Fed. 813; *In Re Spenser,* 5 Sawyer 195. Aliens cannot acquire right or title by any period of possession, as they cannot hold title adversely. *Heiskell v. Trout,* 31 W. Va. 810, 8 S. E. 557; *Clay v. Clay,* 26 Tex. 24; *Leary v. Leary, supra.* To acquire title by ten years' possession, claim of title must have been adverse. *Blake v. Shriver,* 27 Wash. 593, 68 Pac. 330. The color of title under which taxes can be paid must be from an instrument not prohibited, and claim must be in good faith. *Bullene v. Garrison,* 1 Wash. Ter. 587; *Moore v. Brown,* 11 How. 414, 13 L. Ed. 751; *May v. Sutherlin,* 41 Wash. 609, 84 Pac. 585. Lou Graham was always in possession under the void instrument and was thereby a tenant at will, and could not hold adversely to plaintiff. Taylor, Landlord & Tenant, § 60; Wood, Landlord & Tenant, § 15; Gear, Landlord & Tenant, § 34; Tiedeman, Real Property, § 216; *Ezelle v. Parker,* 41 Miss. 520; *Goodwin v. Clover,* 91 Minn. 438, 98 N. W. 322, 103 Am. St. 517; *Hall v. Wallace,* 88 Cal. 434, 26 Pac. 360; *Griffin v. Sheffield,* 38 Miss. 359, 77 Am. Dec. 646. Estoppel never arises to permit an act prohibited by law and cannot be pleaded for such purposes. *Central Land Co. v. Laidley* and *In Re Comstock, supra; Semple v. Bank of British Columbia,* 5 Sawyer 88; *Oregonian R. Co. v. Oregon R. & Nav. Co.,* 23 Fed. 232; *Dickinson v. Glenney,* 27

Conn. 103; *Concord Bank v. Bellis*, 10 Cush. 276; *Lowell v. Daniels, supra; Martin v. Dwelly*, 6 Wend. 9, 21 Am. Dec. 245; *Keene v. Coleman*, 39 Pa. St. 299, 80 Am. Dec. 524; *White v. Franklin Bank*, 22 Pick. 181; *Pells v. Webquish, supra*. Neither the state nor county can plead or rely on estoppel, being neither parties at interest, or misled by action of Abrams. *Jackson v. Van Bergen*, 3 Johns. Cases 101; *Murray v. Briggs*, 29 Wash. 245, 69 Pac. 765. Neither adverse possession, payment of taxes, covenant of warranty, or estoppel are included among the constitutional exceptions, and aliens cannot hold by such subterfuges. *State ex rel. Winston v. Hudson Land Co., supra*. The Hamburg and Prussia treaties were superseded by the imperial constitution of Germany, prior to the treaty with Salvador. *In Re Strobel's Estate*, 39 N. Y. Supp. 169. The favored nation clauses in the treaties pleaded are not self-executing. *Bartram v. Robertson*, 122 U. S. 116, 7 Sup. Ct. 1115, 30 L. Ed. 1118; *Whitney v. Robertson*, 124 U. S. 190, 8 Sup. Ct. 456, 31 L. Ed. 386. Even if the treaties ever permitted aliens to hold land in any state, they were repealed by Congress as to Washington, when its constitution was adopted in 1889. *Ward v. Race Horse*, 163 U. S. 504, 16 Sup. Ct. 1076, 41 L. Ed. 244; *Thomas v. Gay,* 169 U. S. 264, 18 Sup. Ct. 340, 42 L. Ed. 740; *Cherokee Tobacco*, 11 Wall. 616, 20 L. Ed. 227; *Head Money Cases*, 112 U. S. 580, 5 Sup. Ct. 247, 28 L. Ed. 798. There can be no escheat to the state unless a defeasible title passed. The state of Washington only starts the "machinery of law in operation" to set aside the void transfer for benefit of the owner. *State v. Morrison* and *State ex rel. Morrell v. Superior Court, supra*.

*The Attorney General, R. F. Booth, Kenneth Mackintosh,* and *R. W. Prigmore*, for appellants the State of Washington and County of King. The state is the only party that can question the alien's right to hold real estate. *Oregon Mortgage Co. v. Carstens*, 16 Wash. 165, 47 Pac. 421, 35

L. R. A. 841; *Goon Gan v. Richardson,* 16 Wash. 373, 47 Pac. 762; *Manuel v. Wulff,* 152 U. S. 505, 14 Sup. Ct. 651, 38 L. Ed. 532; *Phillips v. Moore,* 100 U. S. 208, 25 L. Ed. 603; *McKinley Creek Min. Co. v. Alaska United Min. Co.,* 183 U. S. 563, 22 Sup. Ct. 84; *Carlow v. Aultman & Co.,* 28 Neb. 672, 44 N. W. 873; *Madden v. State,* 68 Kan. 658, 75 Pac. 1023. Abrams is estopped from asserting title to the property. *Madden v. State, supra; Commonwealth v. Andre,* 3 Pick. 224; *Patterson v. Patterson* (Tex. Civ. App.), 27 S. W. 837; *Hepburn v. Dunlop,* 1 Wheat. 179, 4 L. Ed. 65; *Ryan v. United States,* 136 U. S. 68, 10 Sup. Ct. 913, 34 L. Ed. 447; *Dobbins v. Cruger,* 108 Ill. 188, *Carbrey v. Willis,* 89 Mass. 364, 83 Am. Dec. 688. Lou Graham's declaration of intention to become a citizen could not have been made in good faith. 5 Fed. Stat. Ann., 202 (Rev. Stat. § 2165); Id. 210-213 (Rev. Stat. §§ 5395, 5424, 5425, 5428); 3 Fed. Stat. Ann., 292 (18 Stat. at Large 477); *In Re Spenser,* 5 Sawyer 195; *United States v. Walsh,* 22 Fed. 644; *In Re Bodek,* 63 Fed. 813; *In Re Hong Yen Chang,* 84 Cal. 63, 24 Pac. 156. The alien heirs have no claim by virtue of treaty provisions with the Hanseatic Republic, Prussia, or Salvador, which have been abrogated. U. S. Foreign Relations 1871, p. 383; 3 New York Const. Con. 1894, part. 2, pp. 259, 265; 16 New International Ency., p. 894; 2 Butler, U. S. Treaty Making Powers, p. 439; U. S. Treaties and Conventions, 1876-87, p. 1234; 29 Stat. at Large, 618; *Chae Chan Ping v. United States,* 130 U. S. 581, 9 Sup. Ct. 623, 32 L. Ed. 1068; *Whitney v. Robertson,* 124 U. S. 190, 8 Sup. Ct. 456, 31 L. Ed. 386; *Head Money Cases,* 112 U. S. 580, 5 Sup. Ct. 247, 28 L. Ed. 798; *Ward v. Race Horse,* 163 U. S. 504, 16 Sup. Ct. 1076, 41 L. Ed. 244; *Thomas v. Gay,* 169 U. S. 264, 18 Sup. Ct. 340, 42 L. Ed. 740; *Donaldson v. State* (Ind.), 67 N. E. 1029; *Bartram v. Robertson,* 122 U. S. 116, 7 Sup. Ct. 1115, 30 L. Ed. 1118; President's Messages 1889, pp. 741, 746.

*Hughes, McMicken, Dovell & Ramsey,* for respondents, contended, *inter alia,* that an alien takes a defeasible estate, good against all excepting the state. 2 Am. & Eng. Ency. Law (2d ed.), p. 70, and cases cited; *Taylor v. Benham,* 5 How. 233, 12 L. Ed. 130; *Fairfax v. Hunter,* 7 Cranch. 603, 3 L. Ed. 453; *Phillips v. Moore,* 100 U. S. 208, 25 L. Ed. 603; *Manuel v. Wulff,* 152 U. S. 505, 14 Sup. Ct. 651, 38 L. Ed. 532; *Sheaffe v. O'Neil,* 1 Mass. 256; *Jackson v. Beach,* 1 Johns. Cases 399; *Doe v. Robertson,* 11 Wheat. 332, 6 L. Ed. 488; *Orr v. Hodgson,* 4 Wheat. 453, 4 L. Ed. 613; *Gray v. Kauffman,* 82 Tex. 65, 17 S. W. 513; *Donovan v. Pitcher,* 53 Ala. 411, 25 Am. Rep. 634; *People ex rel. Attorney General v. Folsom,* 5 Cal. 373; *Norris v. Hoyt,* 18 Cal. 277: *McKinley Creek Min. Co. v. Alaska United Min. Co.,* 183 U. S. 563, 22 Sup. Ct. 84, 46 L. Ed. 331. The word "void" in the constitution must be construed as voidable at the instance of the state. 28 Am. & Eng. Ency. Law (2d ed.), p. 474; 29 Id. pp. 1065, 1066; *Sadler v. Niesz,* 5 Wash. 182, 31 Pac. 630, 1030; *Columbia etc. R. Co. v. Braillard,* 12 Wash. 22, 44 Pac. 382; *Wildes v. Vanvoorhis,* 15 Gray 139; *Van Shaack v. Robbins,* 36 Iowa 201; *Ewell v. Daggs,* 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682; *Tolbert v. Horton,* 31 Minn. 518; *Oregon Mortgage Co. v. Carstens,* 16 Wash. 165, 47 Pac. 421, 35 L. R. A. 841; *Goon Gan v. Richardson,* 16 Wash. 373, 47 Pac. 762; Devlin, Deeds, § 131. The rule adopted by this court in the cases above cited is universally applied by the courts of this country under statutes or constitutional provisions similar to our own. *Phillips v. Moore,* 100 U. S. 208, 25 L. Ed. 603; *Williams v. Bennett,* 1 Tex. Civ. App. 498, 20 S. W. 856; *Carlow v. Aultman & Co.,* 28 Neb. 672, 44 N. W. 873; *Pembroke v. Huston,* 180 Mo. 627, 79 S. W. 470; *American Mortgage Co. v. Tennille* (Ga.), 13 S. E. 158; *Quigley v. Birdseye,* 11 Mont. 439, 28 Pac. 741; *Hammekin v. Clayton,* 2 Woods 336; *De Merle v. Mathews,* 26 Cal. 456; *Hickory Farm Oil Co. v. Buffalo etc. R. Co.,* 32 Fed. 22; *Manuel v. Wulff, supra.* Alienage of the

vendee is not sufficient ground to entitle a vendor to a decree rescinding a contract for the sale of lands. *Hepburn v. Dunlop*, 1 Wheat. 179, 4 L. Ed. 65. The deed of Abrams was sufficient color of title to support the statute of limitations. 1 Am. & Eng. Ency. Law (2d ed.), p. 850, subd. b; *Brooks v. Bruyn*, 35 Ill. 392; *Swift v. Mulkey*, 17 Ore. 532, 21 Pac. 871; 1 Cyc. 1082; *Ward v. Huggins*, 7 Wash. 617, 32 Pac. 740, 1015, 36 Pac. 285; *Dibble v. Bellingham Bay Land Co.*, 163 U. S. 63, 16 Sup. Ct. 939, 41 L. Ed. 72. Abrams is estopped by his acquiescence in the occupancy, payment of taxes, and the making of improvements. *Commonwealth v. Andre*, 3 Pick. 224; *Patterson v. Patterson* (Tex. Civ. App.), 27 S. W. 837; *Miller v. Miller*, 60 Pa. St. 16, 100 Am. Dec. 538; *Maple v. Kussart*, 53 Pa. St. 349, 91 Am. Dec. 214; *Walker v. Walker*, 42 Ill. 311, 89 Am. Dec. 445; *Needham v. Clary*, 62 Ill. 344. A person conveying title to land by warranty deed is thereafter estopped from claiming title to such land. *Dobbins v. Cruger*, 108 Ill. 188; *Carbrey v. Willis*, 89 Mass. 364, 83 Am. Dec. 688; *Fredericks v. Davis*, 3 Mont. 251; *Wilson v. McEwan*, 7 Ore. 87; *Macloon v. Smith*, 49 Wis. 200, 5 N. W. 366. And this is true, even though the deed could not operate as a grant. *Terrett v. Taylor*, 9 Cranch 43, 3 L. Ed. 650; *Ryan v. United States*, 136 U. S. 68, 10 Sup. Ct. 913, 34 L. Ed. 447. A collateral assault cannot be made upon the validity of the naturalization proceedings instituted by Lou Graham. *State v. Barrett*, 40 Minn. 65, 41 N. W. 459; *Ackerman v. Haenck*, 147 Ill. 514, 35 N. E. 381; *Behrensmeyer v. Kreitz*, 135 Ill. 591, 26 N. E. 704; *Raymond v. Raymond*, 1 Ind. Ter. 334, 37 S. W. 202; *United States v. Gleason*, 78 Fed. 396. The validity of naturalization papers can only be called in question by a direct proceeding by the United States. *Raymond v. Raymond, supra; United States v. Norsch*, 42 Fed. 417. Under the laws of other states, similar to our constitution, aliens who have declared their intention, according to law, to become citizens of the United States, may hold land in fee simple.

*State v. Beackmo*, 8 Blackf. (Ind.) 246; *Settegast v. Schrimpf*, 35 Tex. 323. Immediately upon filing the declaration, the prohibition of the constitution was removed, and thereupon title became perfect and unassailable in her. *Osterman v. Baldwin*, 6 Wall. 116, 18 L. Ed. 730; *Harley v. State*, 40 Ala. 689; *Jackson v. Beach, Doe v. Robertson*, and *Manuel v. Wulff, supra; Man v. Huk*, 3 Land Dec. 452; *Lord v. Perrin*, 8 Land Dec. 536. The alien heirs take by inheritance. *Trustees of University v. Miller*, 14 N. C. 188; *Donaldson v. State* (Ind.), 67 N. E. 1029; William III, Statutes, 11, 12; *Palmer v. Downer*, 2 Mass. 179; *M'Creery v. Somerville*, 9 Wheat. 354, 6 L. Ed. 109; Laws 1895, p. 197, § 1. Under article 6 of the Federal constitution the rights guaranteed by a treaty will override anything in contravention thereof in the constitution or laws of a state. *Hauenstein v. Lynham*, 100 U. S. 483, 25 L. Ed. 628; *Orr v. Hodgson, supra; Opel v. Shoup*, 100 Iowa 407, 69 N. W. 560, 37 L. R. A. 583; *Wunderle v. Wunderle*, 144 Ill. 40, 33 N. E. 195, 19 L. R. A. 84; *Schultze v. Schultze*, 144 Ill. 290, 33 N. E. 201, 36 Am. St. 432, 19 L. R. A. 20; *People v. Gerke*, 5 Cal. 381; 8 U. S. Stat. at Large, pp. 166, 370; 18 Id. p. 726; *In Re Race Horse*, 70 Fed. 598; *In Re Parrott*, 1 Fed. 481. The formation of an empire in which is invested the treaty-making power does not abrogate a treaty previously entered into with one of the constituent parts of the empire, where treaties so made were not annulled by the instrument under which the empire was formed. 28 Am. & Eng. Ency. Law (2d ed.), p. 487; *In Re Thomas*, 12 Blatchf. 370; 2 Vattel, Law of Nations, ch. 12, § 197; Hall, International Law, § 27. The treaties were not abrogated by act of Congress. U. S. Const., art. 6; 28 Am. & Eng. Ency. Law (2d ed.), p. 487; *Society v. New Haven*, 8 Wheat. 464, 5 L. Ed. 662; *Chae Chan Ping v. United States*, 130 U. S. 581, 9 Sup. Ct. 623, 32 L. Ed. 1068; *Head Money Cases*, 112 U. S. 580, 5 Sup. Ct. 247, 28 L. Ed. 798.

Crow, J.—This action was commenced by the plaintiff, Robert Abrams, to recover possession of, and quiet title to, certain real estate in the city of Seattle, which, on August 1, 1890, for a consideration of $3,500 then received, he and his wife conveyed by warranty deed to one Lou Graham. His grantee entered into immediate and exclusive possession, made valuable improvements, and continued to exercise full acts of ownership, until March 11, 1903, when she died intestate. Shortly after her death, the defendant R. V. Ankeny was appointed and qualified as her administrator, and has ever since been in possession, leasing the premises to the defendants N. A. Hebert and C. W. Shomo. The plaintiff has never been in possession since the date of his deed, nor has he at any time claimed title or right of possession prior to the commencement of this action, in September, 1904. Lou Graham was an alien, being a subject of the German Empire. On May 17, 1894, she filed in the United States district court for the district of Washington, northern division, her declaration of intention to become a citizen of the United States, but never took any further steps to perfect her citizenship. For a long time prior to obtaining her deed, and at all times thereafter, she was a woman of notoriously bad character. Immediately after purchasing the property, she constructed thereon a three-story brick building, in which she, as proprietress, conducted a house of prostitution until her death. She was repeatedly arrested and fined in the police court of the city of Seattle for her violations of the law in conducting such house. The defendant Johann Bernhard Aug. Ohben, her brother, and the defendants Johanna Bertha Ohben-Klaus and Pauline Eberhardt (nee Ohben), her sisters, all aliens, are her only heirs at law, and will hereafter be mentioned as the "alien heirs." The plaintiff, Abrams, claims title to the real estate on the theory that, as Lou Graham was an alien, his deed was absolutely void, and passed no title. The state of Washington and the county of King have each filed separate answers, claiming that the property, upon the death of Lou Graham,

by operation of law, escheated to the state for the benefit of the school fund, while the alien heirs claim title by descent from the deceased.

The trial court found all the facts above stated, and further found, that the real estate was, at the date of the trial, of the value of $15,000; that the improvements thereon were of the additional value of $25,000; that no action or proceeding had ever been brought or instituted by the defendants the state of Washington and the county of King against Lou Graham, in her lifetime, for any escheat or forfeiture of the real estate; that at all times subsequent to the purchase of the real estate by Lou Graham, and up to the time of her death, she, under claim and color of title made in good faith, had paid or caused to be paid all taxes levied thereon; that since her decease the defendant, R. V. Ankeny, as her administrator, has paid all subsequent taxes; that Lou Graham was born in Hamburg, Germany; that her true name was Emelie Ohben; that after coming to this country she adopted the name of Lou Graham, which name was so adopted by her in good faith; that for more than twenty years immediately preceding her decease, she lived in the city of Seattle under the name of Lou Graham, and in that name owned and held the real property in dispute in this action, and other real property; that she was never at any time known by any other name in the city of Seattle; that since the year 1888 she was known to and corresponded with her relatives under the name of Lou Graham, and in that name paid visits to them in Germany; that the defendants, the alien heirs above mentioned, and the said Lou Graham were all citizens and subjects of the republic of Hamburg until the formation of the German Federation, and thereafter became and continued to be citizens and subjects of the German Empire, except as the citizenship of Lou Graham might have been affected by her declaration of intention to become a citizen of the United States.

On the foregoing findings the court made and entered its conclusions of law, as follows:

"That the plaintiff, Robert Abrams, has no right, title or interest in or to the premises in controversy, or any part thereof, and is not entitled to recover in this action.

"That the premises in controversy are not subject to escheat or forfeiture at the suit of the defendant the state of Washington, or of the defendant the county of King, upon their cross-complaints, or otherwise.

"That the defendant R. V. Ankeny, as administrator of the estate of Lou Graham, deceased, is entitled to the possession of said premises, for the purpose of continuing and concluding the administration of the estate of Lou Graham, deceased, and is so entitled to hold the possession thereof by himself and his tenants.

"That the defendants Johann Bernhard Aug. Ohben, Johanna Bertha Ohben-Klaus and Pauline Eberhardt, as the sole surviving heirs of the said Lou Graham, are the owners of the premises in controversy, by inheritance from the said Lou Graham, and are entitled to have said premises distributed and set apart to them upon the final settlement of said estate."

From a final judgment and decree in favor of the alien heirs, the plaintiff Abrams, the state of Washington, and the county of King have separately appealed.

The appellants have excepted to a portion of the findings made by the trial court, but from an examination of the entire record we conclude that the facts above stated are fully supported by the evidence. The only contention between the state of Washington and the county of King is whether the property has escheated for the benefit of the school fund of the entire state or for the benefit of the school fund of King county only, and this question was reserved by them for future determination in the event this court should hold the land to have escheated. Many assignments of error are made by the appellants, but they all depend for their determination upon the construction to be placed upon § 33 of art. 2 of the constitution of the state of Washington, which reads as follows:

"The ownership of lands by aliens, other than those who in good faith have declared their intention to become citizens of

22—45 WASH.

the United States, is prohibited in this state, except where acquired by inheritance, under mortgage or in good faith in the ordinary course of justice in the collection of debts; and all conveyances of lands hereafter made to any alien directly, or in trust for such alien, shall be void; *Provided,* That the provisions of this section shall not apply to lands containing valuable deposits of minerals, metals, iron, coal, or fire clay, and the necessary land for mills and machinery to be used in the development thereof and the manufacture of the products therefrom. Every corporation, the majority of the capital stock of which is owned by aliens, shall be considered an alien for the purposes of this prohibition."

The appellant Abrams contends that the purchase of lands by aliens is prohibited in this state; that all conveyances of land to them are absolutely void; that Lou Graham's declaration of intention to become a citizen was not made in good faith; that his deed to her, being absolutely void, conveyed no title, and that the legal title, therefore, remained in himself.

The appellants the state of Washington and county of King claim that the deed to Lou Graham was void as against the state; that the state could, during her lifetime, by a proceeding in the nature of office found, have declared a forfeiture and escheat of the realty; that on her death it escheated by operation of law; that her declaration of intention to become a citizen of the United States was not made in good faith in contemplation of the constitution; that being an alien she had no inheritable blood; and that upon her decease she could transmit no title to her alien heirs, who now claim by inheritance.

At common law an alien might take land by deed and hold the same as against all persons whomsoever, subject only to the right of the state to claim it by escheat upon office found, or by some other act or procedure equivalent thereto, and until such action was taken by the state, the alien might dispose of his interest in the realty, either by conveyance or devise, and his grantees or devisees would thereupon acquire

title notwithstanding his alienage. An alien could neither take nor transmit title to real property by descent, having no inheritable blood. If he died intestate without having made conveyance of the land acquired by deed, the same immediately vested by escheat in the state without any inquest of office found. 2 Am. & Eng. Ency. Law (2d ed.), 70-74; 2 Cyc. 90, 3 Current Law, 138; 1 Bacon's Abridgment, Chapter on Aliens, 202; 2 Kent, Commentaries, p. 61; 1 Jones, Law of Real Property in Conveyancing, §§ 163, 166.

"As to who may be freeholders, there is no exception in this country, beyond the disability in some states arising from alienage. By the common law, the chief difficulty, in this respect, is in acquiring title rather than in holding the estate when acquired. Thus an alien may purchase lands or take them by devise and hold them against all the world but the state. Nor can he be divested of his estate, even by the state, until after a formal proceeding called 'office found;' and until that is done, may sell and convey or devise the lands, and pass a good title to the same. (And if an alien purchase lands and afterwards become naturalized before office found, he acquires an indefeasible estate.) But an alien cannot take lands by descent, nor transmit them to others as his heirs by the common law. 1 Washburn, Real Property (6th ed.), § 131.

See, also, *Levy v. M'Cartee,* 6 Pet. 102; *Fairfax's Devisees v. Hunter's Lessee,* 7 Cranch 619, 3 L. Ed. 453; *Orr v. Hodgson,* 7 Wheat. 453; *Phillips v. Moore,* 100 U. S. 208, 25 L. Ed. 603; *Moers v. White,* 6 John. Ch. 360; *Quigley v. Birdseye,* 11 Mont. 439, 28 Pac. 741.

Because of lack of inheritable blood in an alien, it was originally the rule at common law that an alien could not inherit from a citizen, nor could the citizen inherit from an alien. 2 Cyc. 94-96. By the act of 11 and 12, Will. III ch. 6, however, Parliament, in the year 1700, removed the common law disability from natural born subjects, claiming descent from, through, or under alien ancestors, so that such subjects might thereafter inherit from their alien ancestors. 1 Bacon's Abridgment, Chapter on Aliens, 203.

We are now called upon to interpret § 33 of art. 2 of our constitution, and determine to what extent it supplants or modifies the foregoing common law principles.   In view of former decisions of this court, we now hold that the appellant Abrams, after the execution and delivery of his deed, retained no right, title, or interest in or to the real estate in dispute. In *Oregon Mortgage Co. v. Carstens*, 16 Wash. 165, 47 Pac. 421, 35 L. R. A. 841, this court, in commenting on a title acquired by an alien corporation by deed, said:

"It is further contended by the plaintiff that its title so taken would be only a defeasible one, at least, and that it could only be attacked by a direct proceeding on the part of the state, and that a deed of the land by the plaintiff to a party entitled to hold it, before the state should undertake to have the conveyance to it set aside, would transfer a good title; and we are of the opinion that this position is well taken, for the objection would then be obviated; and conceding this to be true, the deed tendered by the plaintiff to the defendant would have passed to the defendant an indefeasible title. There are a number of authorities to which our attention has been called, upon provisions very similar to the one here in question, and the tendency of the decisions elsewhere, although under somewhat different provisions, but all for a like purpose, is to strongly sustain the plaintiff here.   6 Thompson, Corporations, § 7918; *Phillips v. Moore*, 100 U. S. 208; *Cross v. De Valle*, 1 Wall. 5; *Carlow v. Aultman*, 28 Neb. 672, 44 N. W. 873; *American Mortgage Co. v. Tennille*, 87 Ga. 28, 13 S. E. 158; *Williams v. Bennett*, 1 Tex. Civ. App. 498, 20 S. W. 856.

"In Murfree on Foreign Corporations, § 353, it is said that, if a foreign company has power to hold real estate *at all*, a deed to it in violation of the local law will pass a title good against all the world except the state.   As an alien may acquire and hold lands in this state in the instances specified, and in case of mineral lands, etc., under the last part of the provision, may clearly obtain title thereto by direct purchase, the mere form of the conveyance can prove nothing; and the real question in each case must be whether the land was obtained in good faith or by fraud in violation of the provisions, and this should only be determined by a proceeding

upon the part of the state. Before such a determination, the presumption would be that the parties had kept within the law, rather than that they had violated it, and *prima facie* the deed would be good."

In *Cross v. De Valle*, 1 Wall. 5, 17 L. Ed. 515, cited in the above quotation, the supreme court of the United States said:

"That an alien may take by deed or devise, and hold against any one but the sovereign until office found, is a familiar principle of law, which it requires no citation of authorities to establish. Nor is it affected by the fact that a statute of Rhode Island will permit aliens to take a license to purchase, which will protect them even as against the state; nor by the fact that a chancellor may not entertain a bill by an alien to enforce a trust, which, if conveyed to him, might immediately escheat to the crown."

In *Goon Gan v. Richardson*, 16 Wash. 373, 47 Pac. 762, an alien had taken a mortgage on real estate, foreclosure of which was sought by his administrator. The appellant, being the grantee of his mortgagor, had by answer alleged that the conveyance to the alien was intended as a deed, and not as a mortgage, and was void. In passing upon this contention, this court, following *Oregon Mortgage Co. v. Carstens, supra*, said:

"Second, it was not competent for the appellant to show that the mortgagee was incapable of taking title to real estate. That could only be shown in a suit by the state. *Oregon Mortgage Co., Limited, v. Carstens, ante*, p. 165."

The later cases of *State ex rel. Winston v. Morrison*, 18 Wash. 664, 52 Pac. 228; *State ex rel. Winston v. Hudson Land Co.*, 19 Wash. 85, 52 Pac. 574, 40 L. R. A. 430; and *State ex rel. Morrell v. Superior Court*, 33 Wash. 542, 74 Pac. 686, are not in conflict with this doctrine. In *State v. Morrison* the attorney general instituted a proceeding on behalf of the state to avoid a ninety-nine-year lease to an alien corporation, no question as to its validity having been raised by the lessor. In *State ex rel. Winston v. Hudson Land Co.*

a similar proceeding was instituted. *State ex rel. Morrell v.
Superior Court, supra*, was a proceeding by certiorari to re-
view the judgment of the superior court in a condemnation
proceeding instituted by an alien corporation to condemn
land of the relator, a citizen, wherein this court, after allud-
ing to the case of *Oregon Mortgage Co. v. Carstens, supra*,
and *Goon Gan v. Richardson, supra*, said:

"But whatever may be said of the soundness of the doc-
trine there enunciated, those cases are easily distinguished
from the case at bar, where the defendant is not questioning
the right of the alien plaintiff to hold real estate, but is ques-
tioning its right to take real estate that belongs to the defend-
ant; and, whatever questions of public policy might intervene
to prevent alleged aliens from being annoyed at the instance
of impertinent or spiteful citizens, such policy could not be
applied to a citizen who is defending the title to and posses-
sion of his own land."

The effect of the above language was not to overrule the
doctrine previously announced in the *Oregon Mortgage Co.*
and *Goon Gan* cases; nor to hold that a grantor could ques-
tion the validity of his deed to an alien grantee. Its effect
was merely to hold that an owner of land, which an alien cor-
poration was seeking to acquire for a public use by exercis-
ing the right of eminent domain, was entitled, in protection of
his own property, to question the right of such alien corpora-
tion to condemn.

Under our constitution and the authorities above cited, we
hold the rule in this state to be that the deed of the appellant
Abrams entirely divested him of any title to the real estate;
that he is in no position to question its validity; that his alien
grantee took what was known at common law as a defeasible
estate, void as against the state only, and which might escheat
to the state upon office found. Although we have found no
enactments in other states identical with our constitutional
provision, we nevertheless think this doctrine is in harmony
with numerous rulings of the appellate courts of this country,

both Federal and State. In any event, the appellant Abrams should be estopped from now claiming any interest in the property. He sold it for a valuable consideration, which he received. He stood idly by for a period of almost thirteen years prior to the death of Lou Graham, and permitted her to retain possession, to make valuable improvements, and to pay all taxes and charges. In the meantime Seattle had grown to be a great city, the property had rapidly increased in value, and the appellant Abrams had made no claim thereto prior to the death of his alien grantee. He now contends that his deed was and is void, and that no estoppel can be based upon a void instrument. An estoppel can, however, be based upon his personal acts. It would be a ruling shocking to every sense of common honesty to now permit him to recover this property. The trial court committed no error in holding that he had no title.

The appellants the state of Washington and county of King claim title by escheat, on the theory, that Lou Graham was at all times an alien; that her declaration of intention to become a citizen of the United States was void; that she being an alien of notoriously bad character and an habitual violator of the law could not be held to have made such declaration of intention in good faith; that she was prohibited by the terms of our constitution from acquiring title to the real estate by purchase; that as against the state, the deed to her was void; that she had no inheritable blood and could not upon dying intestate transmit title to her alien heirs, and that the property, by operation of law and without any proceeding in the nature of office found, upon her death escheated to the state. In view of our conclusions, it will not be necessary for us to determine whether her declaration of intention was, in contemplation of our constitution, made in good faith. We will consider this case upon the theory that she never made any such declaration. Being an alien, it follows that she had no right to acquire title to real estate in this state by purchase,

and the deed executed to her by the appellant Abrams was void in the sense that a forfeiture of the property might have been declared by the state at any time while it remained in her possession and under her control, she claiming title under such deed. This court, however, in the case of *Oregon Mortgage Co. v. Carstens, supra,* in substance held that an alien holding lands in this state by purchase under a defeasible title, subject to attack on the part of the state, might by deed transfer a good title to a third person entitled to receive and hold it, provided no proceeding had theretofore been taken by the state for the purpose of declaring a forfeiture or escheat, In other words, if Lou Graham, after receiving her deed from the appellant Abrams, had, for a good and sufficient consideration, conveyed the property to a third party entitled to receive title, the state of Washington could not thereafter, by office found, have forfeited such title as against her grantee. The state could, however, at any time prior to such transfer, have successfully instituted proceedings to declare a forfeiture and escheat.

The question now before us is whether, by reason of the death of Lou Graham, the state has lost its right to institute proceedings in the nature of office found for the purpose of declaring a forfeiture and escheat, or whether such right still continues. Under our constitution, an alien, who has not in good faith made any declaration of intention to become a citizen of the United States, may acquire title to real estate (1) by inheritance; (2) under mortgage or in good faith in the ordinary course of justice in the collection of debts; (3) in lands containing valuable deposits of minerals, etc., and (4) in land necessary for mills and machinery to be used in the development of such mineral lands and in the manufacture of the products therefrom. When the constitution authorized aliens to acquire lands in these several instances and methods, it was undoubtedly contemplated that they might acquire a full and complete estate in fee simple, which would include an

estate of inheritance. If this be a correct interpretation, then the estates thus acquired could be transmitted by descent to the heirs of such aliens. It is contended by the state, however, that Lou Graham only acquired a defeasible estate to the land in question, and that, as she was an alien and did not at common law have inheritable blood, she could not transmit any title or estate to her alien heirs, although under the constitution they, as aliens, could receive. In other words, there existed a disability upon her part to transmit, and not upon their part to receive by inheritance. As above stated, the common law of England was so modified by the statute of 11 and 12 Will. III, ch. 6, in the year 1700, as to enable English subjects to inherit from an alien. This statute having been enacted prior to the separation of the American colonies from the mother country, has become a part of the common law of this state, except in so far as it has been supplanted by our constitution or statutory enactments. Under this rule and without the provisions of our constitution, a citizen could inherit from an alien an estate held by such alien at the date of his death, even though it had been defeasible.

When our constitution conferred upon aliens the right to inherit, we interpret it to have conferred upon them a full and complete right of inheritance, which would imply not only the right in themselves to receive by such inheritance from a citizen, but also to receive by inheritance from an alien. Were we to place any other interpretation upon the constitution, the necessary result would be that where an alien, under its authority, had rightfully acquired a fee simple title to real estate, for instance by mortgage, or in good faith in the ordinary course of justice in the collection of a debt, and had immediately thereafter died intestate, his heirs, if aliens, would not be able to inherit such real estate, not because of any disability upon their part, but because their deceased ancestor had no inheritable blood enabling him to transmit title to them. Such an interpretation would result in a rule of law

causing such property to escheat to the state whenever there was a failure of heirs who were citizens of the United States. No such contingency was contemplated by the framers of our constitution, nor by the people who adopted the same. Our conclusion is that, under our constitution, aliens are entitled to inherit real estate in this state, from, by, or through ancestors whether such ancestors be aliens or citizens. This being true, and the state having failed to forfeit the title of Lou Graham by proceedings in the nature of office found, at any time prior to her death, the real estate in controversy descended to her alien heirs who were authorized to receive the same and became entitled thereto, and the state thereupon lost its right to declare any escheat by forfeiture.

Our conclusions are, (1) that the deed from the appellant Abrams divested him of title to the property; (2) that at all times prior to alienation of the property by Lou Graham, or prior to her death, the state was entitled, by proceedings in the nature of office found, to have declared a forfeiture or escheat; (3) that the state, having failed to declare such forfeiture or escheat prior to her death, lost its right so to do; (4) that upon her death, the real estate descended to her alien heirs. In view of these conclusions, the judgment of the honorable superior court was right, and it is accordingly affirmed.

HADLEY, C. J., MOUNT, FULLERTON, and RUDKIN, JJ., concur.

DUNBAR, J. (dissenting)—I find myself unable to concur in the result reached in the able and painstaking opinion of the majority. I have always been of the opinion that the prohibitory language of the constitution was so plain and unequivocal that it was not susceptible of construction, and that, therefore, conveyances of real estate to aliens should be held to be absolutely void, and I think yet that such a construction would have simplified matters and, when understood,

would not have worked any serious hardship. But, inasmuch as this court has twice decided that the word "void" as used in the constitution only meant "voidable" at the instance of the state, and in consideration of the probable fact that titles have been obtained upon the strength of these decisions, it would probably be unwise and unfair to disturb the rule announced, unwarranted as I think its adoption was.

But, conceding this point, I am unable to understand how the death of the alien in this case, Lou Graham, could change the defeasible into an indefeasible title, for it is conceded that during her lifetime her title was defeasible, and it is incomprehensible to me how the heir can take a greater estate than the ancestor was possessed of. Nor do I think that the statute quoted and relied upon by the majority, viz., 11 and 12 Will. III, chapter 6, aids the conclusion reached. That statute was enacted to relieve a citizen of Great Britain from a disability and, under its terms, the citizen was placed in the same position as a citizen of this government is placed by the former decisions of this court to the effect that a deed from an alien to a citizen, before action on the part of the state, conveyed a good title to the citizen. In both cases the title to the land finally abides in a citizen where it does not interfere with the expressed policy of the law, which is to prohibit alien ownership of lands. If it had been the intention of the statute quoted to permit aliens to inherit from an alien, the enabling provision would not have been restricted to the English subjects, and if we base our decisions upon the construction given by the majority to that statute, to be logical we must go further than our former decision and hold that a deed from an alien to an alien before demand made on the part of the state conveys an indefeasible title to the alien. This, I think, this court will never do, for the reason that it is opposed to both the letter and spirit of the constitution and the common law.

It is true that, under the provisions of our constitution, an alien may acquire title to real estate by inheritance, and so

can a citizen acquire title to real estate by inheritance, but neither can acquire a better title than the ancestor possessed. The aliens then—in this case the German heirs—obviously being unable to inherit any greater estate than that possessed by Lou Graham at the time of her death, and the state having made its demand, and there being no features shown by the record which would equitably estop the state from making such demand, it seems to me that there is no logical escape from the conclusion that the land in question should escheat to the state.

Root, J., concurs with Dunbar, J.