[No. 11671. Department Two. February 13, 1915.]

JOHN PRENTICE, *Appellant*, v. FRANKLIN HOW *et al.*, *Respondents.*[1]

EXECUTION — SALES — ASSIGNMENT OF CERTIFICATE—RECITALS OF DEED. The recital in a sheriff's deed to the effect that it is issued to the grantee as assignee of the holder of the sheriff's certificate of sale is not binding upon persons who are not parties to the deed; and it is not evidence that the sheriff was authorized to execute the deed to the assignee, as against the holder of the certificate.

SAME — SALES — ASSIGNMENT OF CERTIFICATE—SHERIFF'S DEED— VALIDITY. A sheriff's deed on execution sale reciting that the certificate of sale has been assigned to the grantee, who was the attorney for the holder of the sheriff's certificate of sale, an alien at that time absent from the United States, is insufficient to pass the title to the land sold to the attorney or his heirs, where it appeared that the certificate of sale had not been assigned to, and no consideration had been paid by, the attorney, who had evidently taken that step in an effort to protect his client, and had attempted to execute a 99-year lease to the client, and had paid taxes in the client's name and during his absence for many years, and had left his client's lessees in possession of the property.

ADVERSE POSSESSION—ALIENS—COLOR OF TITLE—SHERIFF'S CERTIFI- CATE OF SALE—PAYMENT OF TAXES. A sheriff's certificate of sale to an alien, coupled with an assignment thereof and a quitclaim deed from the alien to a citizen, on which a sheriff's deed was issued to the assignee, constitutes a complete chain of title; or at least color of title upon which a complete title is vested by adverse possession and payment of taxes for more than seven years.

ALIENS—TITLE TO REAL ESTATE—RIGHT TO QUESTION. The right of an alien to hold real estate contrary to the prohibition of art. 2, § 33, of the state constitution can be questioned by the state alone, and where the state fails to move in the matter until after convey- ance by the alien to a citizen, the right to raise the question of title is foreclosed.

[1]Reported in 146 Pac. 388.

Appeal from a judgment of the superior court for Franklin county, Mills, J., entered July 1, 1913, in favor of the defendants, in an action to quiet title, tried to the court. Affirmed.

*H. B. Noland,* for appellant.

*D. B. Horrigan* and *Driscoll & Leonard,* for respondents.

CROW, J.—This action was commenced by John Prentice against Franklin How, a minor, Wong How, his guardian, Wong How and Ong How, his wife, and Horrigan Brothers Company, a corporation, to recover possession of and quiet title to lot 12 in block 3, Northern Pacific Railroad Company's plat of Pasco. From a decree in favor of the defendants Franklin How and Horrigan Brothers Company, a corporation, the plaintiff has appealed.

Wong How, one of the defendants herein, is a Chinaman and an alien. Franklin How, a minor, son of Wong How and his wife, is a native of the United States and the state of Washington. The issue presented is whether the title to, and ownership of, lot 12 in block 3, the lot in question, is in the appellant John Prentice or in the minor defendant, Franklin How. The trial court decreed the legal and equitable title to Franklin How. As Horrigan Brothers Company, a corporation, holds as lessee of Franklin How, and its rights are dependent upon and protected by the title which was decreed to Franklin How, no further notice need be taken of it. Franklin How not only claimed title through his father Wong How, but also pleaded title by adverse possession under several statutes of this state. Our conclusion is that he maintained each and every defense pleaded. We shall, therefore, discuss but one of his sources of title, which we find sufficient to sustain the final decree.

On the trial, it was agreed that the Pasco Union Land Company, a corporation, hereinafter called the land company, was the common source of title. The record shows beyond question, that the land company held title to and owned

several thousand lots in the city of Pasco; that, although Wong How, father of Franklin How, for many years claimed to be the owner of lot 12 in block 3, and was in possession thereof, the record legal title thereto also stood in the name of the land company. It appears that, prior to the year 1896, one R. Olney, now deceased, husband of L. L. Olney, also now deceased, held certain claims against the land company; that he assigned these claims to M. W. Olney, his daughter, who commenced an action against the land company to recover the same; that on May 5, 1896, she recovered a judgment against the land company for $11,336 and costs; that an execution issued thereon was levied upon the lots owned by the land company, and also on lot 12, block 3, the title to which stood in the name of the land company, although at that time the lot was in the possession of Wong How who claimed ownership; that in due course the lots were all sold under the execution at sheriff's sale; that, at the sheriff's sale, Wong How, to protect his claim of ownership and possession, purchased lot 12, block 3, for $165; that a few other lots were purchased for small amounts by other parties; that all the remaining lots, several thousand in number, were purchased by M. W. Olney, the judgment creditor; that the sale was duly confirmed; that certificates of sale were issued to the purchasers, including a separate certificate of sale to Wong How for lot 12, block 3; and that, under Wong How's certificate of sale, the appellant, John Prentice, and the respondent Franklin How both claim title.

Appellant claims title under the Wong How certificate of sale in the following manner: It appears that, on January 24, 1899, J. J. Davis, then sheriff of Franklin county, in pursuance of the Wong How certificate of sale, executed and delivered to R. Olney a sheriff's deed for lot 12, block 3. This deed, which was introduced in evidence and is now before us as an exhibit, was never recorded, nor does it have attached any certificate of the clerk of the superior court that it had

been presented to him, or entered upon the book of levies. The deed contains the following recital:

"And Whereas, at said sale Wong How became purchaser of the real estate hereinafter described, for the sum of $165, by reason of his being the highest and best bidder therefor at said sale; and

"Whereas, afterwards, to wit: The 16th day of July, A. D. 1896, for a valuable consideration, the said Wong How sold, assigned and transferred all his right, title and interest in and to the hereinafter described real estate to R. Olney, the herein named party of the second part; and

"Whereas, said sale has been in all things confirmed by the said superior court, and the time for redemption having now fully expired, and no application having been made to redeem the hereinafter described premises; now therefore," etc.

After obtaining this deed and while the same was in his possession, R. Olney died intestate; his wife also died intestate, leaving M. W. Olney, their daughter, as their only heir at law. There never was any administration on their estate. After M. W. Olney had acquired title to the several thousand lots sold to her under the execution, taxes on her lots were permitted to become delinquent, foreclosure was had, and tax titles passed to Franklin county. It being supposed that these tax titles were defective and that a settlement could be made with the county, the appellant John Prentice obtained from M. W. Olney a quitclaim deed for all of her lots, paying a consideration of $125 therefor. This deed did not include lot 12 in block 3, as it had not been sold to M. W. Olney at the sheriff's sale. Later appellant obtained from M. W. Olney a quitclaim deed for lot 12, block 3, the record indicating that he represented to her that it had been omitted inadvertently from the first quitclaim deed. He now claims that she had inherited title to lot 12, block 3, as the heir at law of R. Olney and wife, who held title under the sheriff's deed executed and delivered to R. Olney during his lifetime, as above stated.

The record shows, that R. Olney was an attorney at law residing in Pasco; that he was the attorney for Wong How, who was in the possession of lot 12 in block 3, claimed its ownership, and held the sheriff's certificate of sale therefor. Wong How went to China about the year 1896, and remained there for eight years, until after the death of R. Olney. 'It was during his absence that R. Olney obtained in his own name the sheriff's deed above mentioned. Shortly thereafter, R. Olney and his wife executed a lease for ninety-nine years to Wong How, void for the want of an acknowledgment, which lease reads as follows:

"This indenture, made this 30th day of January, 1899, Witnesseth: That R. Olney and L. L. Olney, his wife, of Franklin county, state of Washington, lessors, do hereby lease, demise and let unto Wong How of Pasco, Franklin county, state of Washington, lessee, the following described premises situated in the county of Franklin, state of Washington, to wit: Lot 12 of block 3 in the Northern Pacific Railroad plat of the town of Pasco, together with all and singular the tenements, hereditaments and appurtenances thereunder belonging, to have and to hold the same, for the term of ninety-nine years, to wit: from the 30th day of January, 1899, to the 30th day of January, 1998, and yielding and paying therefor the sum of one dollar, the payment of which is hereby acknowledged. In witness whereof," etc.

Wong How was in China at the date of the execution of this lease, which with the sheriff's deed were found among the papers of R. Olney after his death, and had never been delivered. Shortly after the death of R. Olney, they came into the possession of his daughter, M. W. Olney. She caused them to be left with an agent of Wong How, who was in charge of his property during his absence in China. Wong How testified that he had never assigned the certificate of sale to R. Olney; that he never authorized the execution of a sheriff's deed to him; that he never received the ninety-nine-year lease, and that the instruments had never been delivered to him.

The title of respondent Franklin How was obtained in the following manner: After Wong How returned from China, under the authority of his certificate of sale, he and his wife Ong How, on the 25th day of February, 1908, by quitclaim deed, conveyed lot 12 in block 3 to the respondent Franklin How. This deed was duly acknowledged and recorded. Thereafter, on the 18th day of March, 1911, in pursuance of the certificate of sale and the quitclaim deed, J. W. Hays, then sheriff of Franklin county, executed and delivered to Franklin How a sheriff's deed for lot 12 in block 3, which deed contained the following recital:

"And Whereas, on the 25 day of February, A. D. 1908, Wong How, purchaser aforesaid, duly sold, transferred and assigned unto Franklin How, party of the second part, herein, a sheriff's certificate of purchase to the property hereinafter described, and set forth in this instrument of conveyance, and authorized and directed the said sheriff to issue a deed for the same to the said party of the second part herein instead of to him; and

"Whereas, since the making of said sale the said J. W. Hays, party of the first part, has succeeded to the office of sheriff of the county of Franklin, state of Washington, and is now such sheriff;

"Now, Therefore." etc.

This deed was duly acknowledged, was presented to the clerk of the superior court of Franklin county on the 21st day of March, 1913, was entered upon the book of levies, was afterwards recorded in the manner provided by law, and was authorized by Wong How. It is under the certificate of sale to Wong How, the quitclaim deed from Wong How to the respondent Franklin How, and the sheriff's deed to Franklin How, that Franklin How now claims to hold the legal title. The record further shows that Franklin How and Wong How, his predecessor in interest, have paid all taxes on the property since the year 1896, and until the time of the commencement of this action, with the possible exception of one or two years, for which years plaintiff, John Prentice, made

payment, before payment could be made by respondent or his predecessor in interest. The evidence further shows that Franklin How and his predecessor, Wong How, have been in the open, notorious, exclusive and adverse possession of the lot for more than twenty years prior to the commencement of this action; that they have exercised dominion over the same at all times, and that the lot has been improved with buildings, with the possible exception of about two years from early in 1903, during which period the first buildings were removed, and that other buildings were thereafter erected by Wong How or his lessee.

It is conceded that, on July 27, 1903, the date on which appellant, John Prentice, obtained his quitclaim deed for lot 12, block 3, from M. W. Olney, the value of the lot did not exceed $150; that he did not commence this action until December 16, 1912, and that on the latter date the value had increased to some six or seven thousand dollars. Many other facts appear in the record, all favorable to respondent, which we deem it unnecessary to state, the above being sufficient.

From this statement it is manifest that neither R. Olney, M. W. Olney, his heir at law, nor appellant ever acquired title to the property in dispute. Appellant failed to show that Wong How at any time assigned his certificate of sale to R. Olney. No deed appears of record. No assignment has been shown. Wong How denies that any deed or assignment to R. Olney was ever executed by him. The only intimation of any such assignment is the recital set forth in the sheriff's deed which was executed and delivered to R. Olney. This recital was not binding upon persons who were not parties to that deed. 13 Cyc. 612; *Carpenter v. Sherfey,* 71 Ill. 427; *Bosman v. Davis,* 39 Iowa 308.

If, in fact, no assignment had been made, the sheriff was without authority to execute and deliver a deed to R. Olney, and the failure to show such an assignment constitutes a missing link .in appellant's alleged chain of title. The facts are that R. Olney was Wong How's attorney and confidential ad-

viser; that Wong How was an alien without the right to
acquire title to real estate by purchase, under § 33, art. 2, of
the constitution of this state. It is evident that R. Olney,
during Wong How's absence in China, wished to protect his
interests; that to do so he obtained the sheriff's deed in his
own name; that the ninety-nine-year lease, thereafter executed
by himself and wife, was in effect a declaration of trust in
Wong How's favor, and that R. Olney held these papers at
the time of his death, doubtless intending to use them in some
manner for the purpose of protecting his client. These instru-
ments were never delivered, and Wong How denies that they
were authorized by him. They came into his possession with-
out legal delivery, through M. W. Olney, the daughter of R.
Olney, who caused them to be handed to a Chinaman who,
as agent, represented Wong How while he was absent from
the United States. In support of these conclusions, attention
may be called to the fact that it further appears from the
record that R. Olney made repeated payments of taxes on
behalf of Wong How, in his name and during his absence, for
many years. There is no evidence that R. Olney paid any con-
sideration for an assignment of the certificate of sale or for the
sheriff's deed. It is undisputed that, at all times prior to
R. Olney's death, Wong How, by his lessees, was in possession
of the property, and it clearly appears that appellant never
paid any consideration whatever for his pretended title.

Referring to the title of Franklin How, this court has
decided that a certificate of sale is color of title. *Philadelphia
Mtg. & Trust Co. v. Palmer*, 32 Wash. 455, 73 Pac. 501;
*Olson v. Howard*, 38 Wash. 15, 80 Pac. 170; *Johnson v.
Bartlett*, 50 Wash. 114, 96 Pac. 833; *Goetter v. Moore*, 53
Wash. 5, 101 Pac. 365.

The certificate of sale to Wong How, the quitclaim deed
from Wong How to respondent, and the deed executed and
delivered by the sheriff of Franklin county to respondent,
constitute a complete chain of title in respondent. These
instruments at least constitute color of title which, with pos-

session and payment of taxes for more than seven years, was sufficient to vest a complete title in respondent. *Goetter v. Moore, supra.*

The record shows that appellant relies upon the sheriff's deed to R. Olney. He contends that Wong How's only interest was the ninety-nine-year lease, and that Wong How, an alien, could not acquire real estate by purchase under the constitution of this state. The only person who could question Wong How's claim or title while he held either a ninety-nine-year lease or a certificate of sale, was the state of Washington, it having authority to institute proceedings for a forfeiture. *Abrams v. State,* 45 Wash. 327, 88 Pac. 327, 122 Am. St. 914. No such proceedings were commenced by the state, and after Wong How conveyed to respondent, a native of the United States, the state of Washington itself could not maintain such an action against respondent. *State ex rel. Atkinson v. World Real Estate Commercial Co.,* 46 Wash. 104, 89 Pac. 471.

It is impossible to read this record without arriving at the conclusion that Franklin How, by his predecessors, has been in possession of the real estate for more than twenty years; that he holds a good record fee simple title, and that the appellant has no interest whatever. Other facts and arguments are presented and discussed in the record and briefs, but their discussion here would only fortify the conclusion we have reached.

The judgment is affirmed.

MORRIS, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.