[No. 15764.  Department Two.  September 3, 1920.]

THE STATE OF WASHINGTON, *on the Relation of W. V. Tanner, Attorney General, Plaintiff,* v. CASPER STAEHELI *et al., Respondents.*[1]

ALIENS (2)—TITLE TO REAL ESTATE—CITIZENSHIP—DECLARATION OF INTENTION—GOOD FAITH—EVIDENCE—SUFFICIENCY. An alien's declaration of intention to become a citizen was not filed in good faith, as required by Const., art. 2, § 33, so as to prevent the escheat of lands purchased by the alien, where the evidence shows that he claimed an alien's right to military exemption, and later, on advice of his counsel, after the state had begun an action to escheat the lands held by him, he filed his declaration of intention to become a citizen.

SAME (3, 5)—TITLE TO REAL ESTATE—CONSTITUTIONAL PROVISIONS —EFFECT OF TREATIES. There is no conflict between Const., art. 2, § 33, prohibiting aliens from acquiring lands in this state by purchase, and the treaty of 1850 between the United States and Switzerland which provides that citizens shall be admitted and treated upon a footing of reciprocal equality in the two countries, where such admission and treatment shall not conflict with the constitutional or legal provisions of the contracting parties, and providing that citizens of each country shall have power to dispose of real property situated within the states of the Union or within the Cantons of the Swiss Confederation in which foreigners shall be entitled to hold real estate, or in case they acquire real property by inheritance which on account of being an alien they are not entitled to hold.

Appeal from a judgment of the superior court for Stevens county, Carey, J., entered July 26, 1919, dismissing an action to forfeit to the state lands held by an alien, tried to the court.  Reversed.

*The Attorney General, D. E. Twitchell, Assistant,* and *Roscoe R. Fullerton,* for relator.

*Zent & Jesseph,* for respondents.

MOUNT, J.—This action was brought by the *Attorney General* to forfeit to the state a certain tract of land

[1]Reported in 192 Pac. 991.

in Stevens county, for the alleged reason that the defendants were aliens and not citizens of the United States and, therefore, prohibited from holding land in this state, under the provisions of art. 2, § 33, of the constitution of this state. The trial of the case resulted in a judgment of dismissal. The *Attorney General* has appealed from that judgment.

The facts, as shown by the pleadings and the proofs, are these: At the time the action was begun, the respondents were aliens, not citizens of the United States or the state of Washington, and had filed no declaration of intention to become citizens. They acquired the land in question by purchase after the state constitution was adopted. This land is agricultural land, not valuable for minerals or used for manufacturing purposes, and was not acquired by inheritance or under mortgage, or in the collection of a debt. The respondent Casper Staeheli was born in Switzerland. After he came to this country his father, in January, 1908, was duly naturalized. After that time the respondent, supposing that the naturalization of his father resulted in making him also a citizen of the United States, exercised all the rights of a citizen until the year 1917, when he was required to respond for military service. Then, in reporting to answer his questionnaire, he concluded he was not a citizen, and claimed military exemption on that account because he was past twenty-one years of age when his father was naturalized in 1908. Thereafter, in February, 1918, the *Attorney General* brought this action. After the action was begun and while it was pending, in June, 1918, respondent filed his declaration of intention to become a citizen of the United States.

Under this state of facts, the trial court was apparently of the opinion that § 33 of art. 2 of the constitu-

tion of this state is in conflict with the treaty of 1850 between the United States and Switzerland, and that, when respondent filed his declaration to become a citizen of the United States while the action was pending, that declaration related back to the time when the respondent acquired the land. The Constitution, by § 33, art. 2, provides as follows:

"The ownership of lands by aliens, other than those who in good faith have declared their intention to become citizens of the United States, is prohibited in this state, except where acquired by inheritance, under mortgage or in good faith in the ordinary course of justice in the collection of debts; and all conveyances of lands hereafter made to any alien directly, or in trust for such alien, shall be void: Provided, that the provisions of this section shall not apply to lands containing valuable deposits of minerals, metals, iron, coal, or fire clay, and the necessary land for mills and machinery to be used in the development thereof and the manufacture of the products therefrom. Every corporation, the majority of the capital stock of which is owned by aliens, shall be considered an alien for the purposes of this prohibition."

We have held, under the provisions of this section, that a lease of land for ninety-nine years to an alien is void (*State ex rel. Winston v. Morrison,* 18 Wash. 664, 52 Pac. 228), and that a lease for forty-five years, made to a corporation where the majority of the stock was held by aliens, was void. *State ex rel. Winston v. Hudson Land Co.,* 19 Wash. 85, 52 Pac. 574, 40 L. R. A. 430. We have also held that the right of an alien to hold real estate contrary to the provisions of this section can be questioned by the state alone. *Prentice v. How,* 84 Wash. 136, 146 Pac. 388. See, also, *Abrams v. State,* 45 Wash. 327, 88 Pac. 327, 122 Am. St. 914, 13 Ann. Cas. 527, 9 L. R. A. (N. S.) 186. So it necessarily follows that the judgment of the trial court was wrong, unless

the fact that the respondent filed his declaration of intention to become a citizen after the action was begun avoids the constitutional provision above quoted, or unless the treaty of 1850 with Switzerland takes the case away from this section of our constitution, because it is an admitted fact that, at the time the action was brought, the respondents were aliens holding the lands by purchase made after the constitution of the state was adopted.

It is argued by respondent in substance that, because Mr. Staeheli filed his declaration of intention to become a citizen of the United States, this declaration relates back to the time he purchased the land, and therefore the state has no right to insist upon the forfeiture of the land. A number of cases are cited to the effect that title to lands held by an alien is not lost if the alien files his intention to become a citizen or becomes naturalized before judgment, for the reason that the naturalization relates back and confirms title in the land. This is no doubt the rule where the contest is between citizens and the state itself has not begun proceedings to forfeit the title, because the state alone can question the title of real estate held by an alien. *Prentice v. How, supra.* No case has been cited to us which holds that an action to forfeit lands such as this by the state can be abated by the defendant merely filing a declaration of intention to become a citizen after the action is begun. If this be the rule, then the constitutional provision above quoted becomes of no practical effect, because any living alien may at any time avoid the constitutional provision by the very simple act of declaring his intention to become a citizen.

But in this case it is unnecessary to determine that question, for we are convinced that the declaration by respondent of intention to become a citizen was not

made in good faith as the constitution specifically requires. If the respondent is entitled to the presumption that he acted in good faith in filing his declaration, we are of the opinion that such presumption was overcome by his own admissions. It is admitted that, in the year 1917, when the government called upon him to answer his questionnaire in order to determine his status in defense of the government, he immediately discovered that he was an alien and claimed his exemption from military service because of that fact. Then, after the state brought this action, he filed his declaration of intention to become a citizen. In short, when he knew that the government required his services, he declined to act as a citizen, but when the state sought to forfeit the lands held by him on the ground that he was an alien, then, and only then, he sought to acquire the rights of a citizen. The words "good faith" used in the constitution mean good faith to the government, that he really intends to become a patriotic citizen and devote his services to the protection of his adopted country. The words "good faith" therein used do not mean for the pecuniary or selfish interest alone of the declarant. We are satisfied, therefore, that the respondent, when he declared his intention to become a citizen of the United States, did not do so in good faith to the government, but did so merely in an endeavor to avoid the consequences of this action. This view is strengthened by the fact that the respondent filed his declaration upon the advice of his counsel who then represented him in this action, the inference from this being that he did not do so of his own volition and in good faith.

It is further argued by respondents that the provision of the constitution above quoted is opposed to the

Treaty of 1850 between the United States and Switzerland. Article 5 of that treaty provides:

"The citizens of each one of the contracting parties shall have power to dispose of their personal property within the jurisdiction of the other, by sale, testament, donation, or in any other manner; and their heirs, whether by testament or *ab intestato,* or their successors, being citizens of the other party, shall succeed to the said property or inherit it, and they may take possession thereof, either by themselves or by others acting for them; they may dispose of the same as they may think proper, paying no other charges than those to which the inhabitants of the country wherein the said property is situated shall be liable to pay in a similar case. In the absence of such heir, heirs, or other successors, the same care shall be taken by the authorities for the preservation of the property that would be taken for the preservation of the property of a native of the same country, until the lawful proprietor shall have had time to take measures for possessing himself of the same.

"The foregoing provisions shall be applicable to real estate situated within the States of the American Union, or within the Cantons of the Swiss Confederation, in which foreigners shall be entitled to hold or inherit real estate.

"But in case real estate situated within the territories of one of the contracting parties should fall to a citizen of the other party, who, on account of his being an alien, could not be permitted to hold such property in the State or in the Canton in which it may be situated, there shall be accorded to the said heir, or other successor, such term as the laws of State or Canton will permit to sell such property; he shall be at liberty at all times to withdraw and export the proceeds thereof without difficulty, and without paying to the Government any other charges than those which in a similar case would be paid by the inhabitant of the country in which the real estate may be situated."

There can be no doubt, as argued by respondent, that a treaty between the United States and a foreign

country is the supreme law of the land, and if the constitutional provision hereinbefore noted, or the laws of this state, are in conflict with the treaty of 1850 with Switzerland, then such constitutional provision and laws must give way to the treaty. The provisions of the treaty above quoted are as effective now as when they were adopted. We fail to see wherein there is any conflict between that treaty and our constitution. There was evidently no intention that the treaty should avoid or conflict with any law of either country, for article 1 of the treaty provides:

"The citizens of the United States of America and the citizens of Switzerland shall be admitted and treated upon a footing of reciprocal equality in the two countries, where such admission and treatment shall not conflict with the Constitutional or legal provisions, as well Federal as State and Cantonal, of the contracting parties."

So it is apparent that the citizens of each country are required to conform to the laws of the other, as well Federal as state and cantonal, of the contracting parties. There is no intention to avoid or conflict with the laws of either country.

The first paragraph of article 5 of the treaty deals with personal property and provides that the citizens of each country shall have power to dispose of their personal property as they see fit, and for the descent and care of such property.

The next paragraph of that article provides:

"The foregoing provisions shall be applicable to real estate situated within the States of the American Union, or within the Cantons of the Swiss Confederation, in which foreigners shall be entitled to hold or inherit real estate."

In this state foreigners are not entitled to hold real estate by purchase. They are allowed only to hold by inheritance, under mortgage, or in the collection of

debts in the ordinary course of justice. Real estate held by foreigners by any one of the methods by which it is lawful to hold is clearly protected by the treaty, but when real estate is held by such foreigners by purchase, or by a method which it is unlawful in the state to hold, it is not protected by this treaty, because the treaty did not intend to, and does not by words, supersede or modify any law of this or any other state in regard to real estate, but provides that the citizens shall be admitted and treated upon a footing of reciprocal equality in the two countries when such admission and treatment shall not conflict with the provisions of state law. We are satisfied this is the reasonable construction of the treaty and that it does not, and was not intended to, modify or avoid any law of the states or of the United States, especially in reference to real estate.

The last paragraph of article 5 relates solely to real estate falling by descent to heirs of the holders and has no application to the facts in this case.

The respondent Casper Staeheli came to this country and state after the adoption of the constitution. He was, therefore, bound by the laws then in force, and he purchased the property in question in direct violation of §33, art. 2, of the constitution. We are of the opinion that the declaration of intention to become a citizen of the United States was not made by Casper Staeheli in good faith as required by the constitution, and that the treaty of 1850 between the United States and Switzerland does not nullify our constitution so as to permit a foreigner to hold real estate by purchase.

It follows that the judgment must be reversed and the cause remanded for a judgment of escheat prayed for in the complaint.

HOLCOMB, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.