[No. 619. Decided December 13, 1892.]

FRANK REESE, *Respondent*, v. MARGARET MURNAN *et al.*, *Appellants*.

RESULTING TRUST—EVIDENCE—DECLARATIONS—VENUE.

The estate of a decedent may be charged with a resulting trust in real property which he had purchased in his own name, when it is made to appear that another furnished the money for a half interest under an agreement that they should be joint owners, and that the joint ownership had been frequently admitted by the decedent to various parties both in conversation and letters.

The declarations of one holding the legal title to real estate, that another has no interest therein, are not admissible in evidence.

The fact that a person claiming a resulting trust in a decedent's land presented a claim to the administrator of the estate for a sum alleged to have been loaned to decedent at the time of the purchase of such land, which claim was rejected, does not cause a forfeiture of such person's rights, where the evidence establishes that such money was used in the purchase on their joint account.

The equitable owner of land the title to which is in a decedent may bring an action to establish his rights thereto in the county where the land is situated, and is not compelled to proceed in the county which has jurisdiction of the administration of such decedent's estate.

In an action to establish a resulting trust in certain land and recover of the trustee half the proceeds arising from the sale of a portion thereof, a decree awarding plaintiff a certain sum and making it a lien upon the trustee's half of the land for payment, is

erroneous, when the only evidence of the sums realized from such sales are the money considerations as expressed in the deeds.

*Appeal from Superior Court, Cowlitz County.*

*Robinson & Rowell, Smith & Littell, Preston, Carr & Preston*, and *Inus Bros.*, for appellants:

Payment of purchase money as evidence of trust is an affirmative fact, and must be established by higher testimony than proof of the declarations of the decedent trustee. *Vandever's Adm'rs v. Freeman*, 20 Tex. 333; *Neil v. Keese*, 5 Tex. 23; *Page v. Page*, 8 N. H. 187; *Towle v. Wadsworth*, 30 N. E. Rep. 602; *Lehman v. Lewis*, 62 Ala. 129; *Falsken v. Harkendorf*, 7 N. W. Rep. 749.

Declarations and acts of a person in possession of property may be given in evidence as showing the character of his possession and the grounds on which he claims to hold the same. *Blake v. White*, 13 N. H. 267; *Witts v. Horney*, 59 Md. 584; *Little v. Libby*, 2 Greenl. 242.

*Judson Applegate, A. R. Titlow*, and *Parker & Williamson*, for respondent:

A resulting trust may be established upon the admissions of the trustee sought to be charged as such. *Raybold v. Raybold*, 20 Pa. St 308; *Baumgartner v. Guessfeld*, 38 Mo. 36; *Malin v. Malin*, 1 Wend. 652; *Tritt v. Crotzer*, 13 Pa. St. 455; *Williard v. Williard*, 56 Pa. St. 124; *Farrell v. Lloyd*, 69 Pa. St. 247; *Hosford v. Hosford*, 42 N. W. Rep. 1019; *Mull v. Bowles*, 28 N. E. Rep. 771.

The opinion of the court was delivered by

STILES, J.—The main question in this case is, what kind of evidence shall be held sufficient to charge the estate of a deceased person with a resulting trust in real property?

Thomas Murnan died seized of certain lands in Cowlitz county, comprising a large part of the "original townsite

of Kalama," and Reese, the respondent, has asserted to the satisfaction of the learned superior court that he was entitled to half of it, because he furnished half of the purchase price of the land, under an agreement with Murnan that the title should be the property of both.    Murnan took the title in his own name, however, and Reese did not, during the former's lifetime, secure any formal recognition of his alleged interest.

To prove his case, the respondent resorted to five differ-. ent species of testimony, viz., testimony tending to show: (1) The previous intimate business and social relations of the parties; (2) an understanding several months before the purchase that they would buy together; (3) that Murnan, on the day before he paid the purchase money and received the deed, obtained from Reese more than money enough to pay half the price, and used this money in paying for the land; (4) oral statements and acts of Murnan, amounting to admissions by him of Reese's interest; (5) letters of Murnan to Reese claimed to contain admissions.

"When one makes an oral contract with another that the latter shall buy land, on joint account, and he in violation of the contract takes a deed to himself, no trust results in favor of the former as to one-half of the land, unless it is shown that he furnished the money for the one-half — in other words, that it was bought with his money." *Bailey v. Hemenway*, 147 Mass. 326 (17 N. E. Rep. 645).

At the time of the purchase the circumstances between them must have been such that Murnan's act in taking title to himself, and refusing to Reese a participation in it, would have been a fraud on the latter.    Pomeroy, Eq. Jur., § 1056.    If Murnan was in debt to Reese, and promised to pay him by securing to him a conveyance of half of this tract of land, his violation of his promise would not avoid the statute of frauds.    *Fickett v. Durham*, 109 Mass. 423.

The third class of testimony concerns the first point of

strife in the case.    The consideration for the land was one
thousand dollars, and the two deeds were sent to Kalama
by the grantor by express, C. O. D.    Murnan being dead,
Reese does not testify, but the express agent makes it
clearly appear that Reese's money, seven hundred dollars,
was paid to Murnan to make up the one thousand dollars
necessary to pay for the deeds.    This fact in no wise de-
pends upon any admission or declaration of Murnan, and
obviates one of the appellant's strongest protests in the
case.    But the fact that Reese's money went into the land
would not alone be sufficient.    Appellants say that Reese
was merely loaning Murnan seven hundred dollars, and the
presumption certainly is with them that the transaction
was only a loan.    Moreover, they are sustained by a pe-
culiar indirect admission made by Reese himself, viz., his
presentation to the administrator of Murnan of a verified
claim for seven hundred dollars, alleged to have been loaned
to deceased February 10, 1890, the day before the deeds
were delivered.    Therefore other facts were necessary to
overcome the presumption, and the apparent admission, for
it must be established that it was respondent's money that
paid for one-half of the land, not that Murnan paid his own
money borrowed from respondent.    Bispham's Equity, § 81.

The testimony included in the fourth class above men-
tioned is too voluminous and contradictory for an abstract
even, and we shall only allude to it briefly.    At the time
of the purchase, and for some time before, Murnan and
Reese lived at Kalama.    Both had been railroad employés,
and were partners in a certain fish business, and owned
other real estate together, and were real estate agents.
There was some testimony showing that they had had under
consideration the project of buying this land as a specula-
tion in the summer of 1889, and it appears probable that a
contract was at that time obtained for the purchase of the
land, running to Murnan as the obligee therein.    Very soon

after the taking of this contract, Murnan commenced to make contracts with third parties for the sale of various lots; and, in conversations with the parties with whom he was bargaining for lots, he frequently stated that Reese was equally interested with him in the land; and the impression in the community seems to have been that they had actually bought the property together. The deeds were received February 11, 1890, and recorded the next day. Both parties remained in Kalama until the latter part of March, when Murnan removed to Seattle, where he remained until his death, September 15, 1890. About July 1st of the same year, Reese became seriously ill, and was confined to his bed, at Castle Rock, until November 1st, after Murnan's death. · The efforts of both men seem to have been engaged, both before and after the receipt of the deeds, in selling lots and creating a "boom" in the town. They were the owners of another tract of land known as the "Union Pacific Addition," and their efforts were given indiscriminately to the sale of lots of both kinds, but early in March Reese sold out the "Union Pacific Addition" to Murnan, and gave him a deed for his interest.

A number of witnesses testify to the actions of Murnan and Reese, and to conversations had with the former to the effect above stated. One person testified that she was in a room in a hotel, soon after February 10th, and heard Reese and Murnan talking in the next room, Reese accusing Murnan of not treating him right in "taking the deed that way," and Murnan excusing himself, and agreeing to make him a deed of his half of the property. Just what property was meant was not mentioned between them, and no deed was made; but if such talk occurred, it undoubtedly related to this particular land. A large printed advertising card was scattered about the town containing the business announcement of "Murnan and Reese, owners of the original townsite of Kalama," who offer Kalama real

estate for sale. Who distributed the card was not made clear, but it was done before the deeds were received, and one witness stated that Murnan himself gave him one of them.

But it is from Murnan's letters that the most certain admissions are obtained. They are twenty or thirty in number, and are all entirely consistent with the the theory of respondent. • All relate to the same subject, the sale of lots. Letter K, of April 20th, says:

"Yours received. I would not sell a —— lot for less than $200. As soon as the town booms we can get more than that. It is no use. We would spend it foolish, and you know that well. See what has become of the money we got. * * * If you can sell a lot do so, and send me half what you get."

Other letters are of like tenor. Reese appears to have become dissatisfied, and wished to sell out and go away, but Murnan absolutely refused. Pending such correspondence, Murnan wrote to J. M. Bush, May 4th:

"Frank (Reese) is doing nothing, but seems to hurt the place more than anything else. He has already got six or seven hundred dollars out of it, more than I had borrowed, and might as well consider himself paid. You can tell him that he has made me too much trouble entirely, and that he had better pull up stakes and leave. I would not have him for a partner for anything. If the —— —— would have behaved himself I would have given him more than he asked in the future, but not until the business was done. You need not bring him up here at all. I am not anxious to see him; but you can tell him that I have started East, and that I left you to see after the lots there, etc. That if he wants $500 for his quit-claim you will give it to him, and unless he does you won't. Don't give him no more, for I can't say how the business will come out yet."

In another letter to the same party a week later he wrote:

"Tell him you think Kalama will not amount to much; and that you think I am honest, but hard to say; that you

will not give more than five hundred dollars for all his interest; that you don't want to take any more risk in it than that.''

It is quite evident that Murnan was endeavoring to face two ways, for in this last letter he set out to Bush what he termed his ''account with Frank,'' viz.:

| | | |
|---|---:|---:|
| Borrowed money | | $600 |
| Paid acct. sale to R. R. Co | $450 | |
| Paid on Des Moines property | 200 | 650 |
| Due me | | $50 |
| Acct. losing my position his acct. as agent Kalama | | 900 |
| | | $950 |

Yet in his letter of April 20th to Reese he spoke of selling half of the ''forty acres for $2,000 cash, so I could pay you,'' meaning a tract in which Reese had no interest.

One of Murnan's favorite schemes for assisting the real estate market in Kalama was the purchase of a newspaper, and the majority of his letters had something to say on that subject. A long letter was sent urging Reese to negotiate with one Pratt, who had a newspaper plant for sale. The entire trend of this, and other letters, was that both should buy the paper, and issue it for the benefit of their interests in Kalama real estate. June 29th he said:

''Now please see Pratt. Remember that time is money. We must get a paper, and we must get out one issue as soon as possible. . . . Think for one moment what an impression it would have on the public to have good cut of Kalama on paper, and one page ad. of ours. Please get up and rustle, and let me know at once what can be done.''

The last quotation followed a suggestion often before made, to have photographs taken of scenes about Kalama, and cuts made therefrom for the newspaper. These and many other circumstances render it highly probable that the direct testimony of witnesses to statements made by Murnan was true; and that he did make the admissions charged to him. Many of the circumstances are of slight weight in them-

selves, as is contended by appellants, but they are so numerous, and they so universally tend in one direction, that they carry great force with them. The letters to Reese, especially, breathe nothing but a union of interest in their subject matter. In some letter Reese threatened legal proceedings of some kind; but in the reply Murnan merely warned him that he could not be scared, upbraided him with his cowardice in being so anxious to give up Kalama, and plunged into pages of suggestions as to what ought to be done. There was nowhere a denial of whatever position Reese had taken, which, reading between the lines of many letters, we should say was probably a demand that he have a partition of their interests, so that he could sell out and get away.

Viewing the whole case as presented, there seems to be no way to harmonize the acts of the parties except upon the theory of the respondent that his money was used to pay for the land under an agreement that he was to be a half owner of it.

The defense sought to show that Murnan had made other declarations to other witnesses that Reese had no interest, but they were not permitted to do so. We know of no rule of law that would admit such declarations. *Wilson v. Patrick*, 34 Iowa, 363.

The deposition of Golden taken before all the defendants had been made parties, and therefore without notice to them, though admitted by the court below, was not considered by it, and is not taken into account here.

Reese's claim presented to the administrator for seven hundred dollars, money loaned February 10, 1890, is an item in his claim made after this suit was commenced for several similar sums, as well as for a half interest in all of the lands here in controversy, and half the proceeds of lands sold by Murnan. Of course, both claims cannot stand; but the mere claim, which was rejected, should not

cause a forfeiture of what are respondent's actual rights
under this evidence.

The jurisdiction of the Cowlitz superior court is objected
to on the ground that if there was an agreement that the
purchase was to be made, and if it was made for the ac-
count of both, then it was a partnership transaction, and
the partnership estate should be settled, under the statute
governing such matters (Code Proc., §§ 947, *et seq.*), in
the superior court of King county, where Murnan died.
But we find no facts in this case going to show an inten-
tion to make this land partnership assets.

Again it is contended that under Code Proc., § 853, this
proceeding should have been taken in King county, because
the administration is there. So far as the land is con-
cerned, the point is not well taken. If respondent is the
equitable owner of land the title to which was in the de-
ceased, he has a right to his property without any regard
to administration. The estate of Murnan is not attacked
in such an action, nor is any portion of the administration
sought to be transferred from the court of the county
wherein he died. The administration is seeking to draw
into itself property with which the estate has no concern.
This must be the rule even though the property in litigation
appears upon the record to have belonged to the deceased.
Where there is a contract in writing for the conveyance of
specific real property by the deceased, the statutes provide
for proceedings in the county where the land is situated
(Code Proc., § 1117), and there is no reason why an en-
tire stranger to the estate should not have the same relief.
Nor do we think violence will be done any safe rule if the
same remedy be extended to the specific personal property,
viz., the unpaid judgment for $2,000 against the Portland
& Puget Sound Railroad Company, which is a judgment of
the court where the action was brought and tried. At any
rate, no objection was made in the court below by the ad-

ministrator to that court's hearing any of the matters at issue under the pleadings.

So far, therefore, we affirm the decree, but we can find no sufficient evidence to sustain that part of the decree which allows respondent fifteen hundred and eighty dollars as half the proceeds of land sold by Murnan during his life time, with a lien upon the other half of the land for the payment of that sum. All that appears in the case is that certain deeds were made, in which money considerations were expressed, but such testimony is not, in our judgment, sufficient to fasten upon an estate the payment of the full sum expressed in the deeds as their considerations. It ought not to be difficult in such cases for the party asserting the indebtedness to show by living witnesses the actual amount paid for each parcel of land, but if it should be impossible in any case, then the value of the land at the time of its conveyance ought certainly to be shown. But the complaint in this instance does not allege positively that any sums whatever were paid to Murnan, but only that they were paid, or contracted to be paid. Moreover there is no question but that Murnan had Reese's full authority to make all the sales that he did make, and that they were equally chargeable with all of the expense of making sales, so that it would be entirely inequitable now to charge Murnan's estate with the whole expense. Again, when Murnan sold any portion of the land, and received money on account thereof, he became the debtor of Reese for his share. True, he might be treated as Reese's trustee. It would, perhaps, be competent for the latter to pursue the trust into the estate, and have it enforced there, but it is nevertheless a debt which must be proven and, while it might under the circumstances become a preferred claim, it is payable generally out of the estate, and cannot be made chargeable as a lien upon any particular property.

The decree will be modified by the elimination of the

money judgment, and as so modified will be affirmed. Costs in the superior court to the respondent; costs in this court to the appellants.

ANDERS, C. J., and SCOTT, HOYT and DUNBAR, JJ., concur.