[No. 19023.　Department Two.　March 16, 1925.]

THE STATE OF WASHINGTON, *Respondent,* v. TAKA HIRABAYASHI *et al., Respondents,* WHITE RIVER GARDENS, INCORPORATED, *et al., Appellants.*[1]

ALIENS (3) — REAL PROPERTY — CONSTITUTIONAL AND STATUTORY RESTRICTIONS. Rem. Comp. Stat., § 10581, prohibiting alien ownership of lands, is not violative of Const., Art. 1, § 3, prohibiting the deprivation of life, liberty or property without due process of law.

CONSTITUTIONAL LAW (100, 102)—CLASS LEGISLATION—PRIVILEGES AND IMMUNITIES—ALIENS—RIGHT TO OWN LAND. Rem. Comp. Stat., § 10581, prohibiting alien ownership of lands is not violative of Const., Art. 1, § 12, prohibiting the granting of privileges or immunities to citizens or classes of citizens which do not equally belong to all other citizens; since it applies only to aliens.

SAME (100, 102, 104)—CLASS LEGISLATION—EQUAL PROTECTION OF LAWS—ALIENS—RIGHT TO OWN LAND. Rem. Comp. Stat., § 10581, prohibiting alien ownership of land, is not violative of the 14th amendment of the Federal constitution, relating to special privileges to citizens, due process of law and the equal protection of the laws.

[1]Reported in 233 Pac. 948.

ALIENS (5)—TREATIES (3)—OPERATION AND EFFECT. Rem. Comp. Stat., § 10581, prohibiting alien ownership of land is not in violation of the treaty between the United States and the Empire of Japan.

ALIENS (3)—DISABILITIES—INTEREST OR BENEFIT IN LANDS—FRAUD—EVIDENCE—SUFFICIENCY. The courts will countenance no subterfuge, however skillfully executed, which will give an alien the right to control and enjoy the rents and profits of land in violation of the policy of the alien land act; and fraud is sufficiently established by clear and convincing evidence, where the formation of a corporation to hold the land, the stock in which was assigned to an alien's minor daughter, was a mere pretence to enable the alien to evade the statutes.

Appeal from a judgment of the superior court for King county, Hall, J., entered April 15, 1924, upon findings in favor of the plaintiff, in an action to escheat alien lands, tried to the court. Affirmed.

*Guie & Halverstadt* and *Ralph H. Higgins,* for appellants.

*Malcolm Douglas, Ewing D. Colvin,* and *Arthur Schramm, Jr.,* for respondents.

HOLCOMB, J.—This is an appeal from a decree escheating to the State a contract interest of the White River Gardens, Incorporated, a corporation in certain agricultural lands described in the complaint.

In the original complaint, the parties defendant proceeded against were Taki Hirabayashi and Jane Doe Hirabayashi, his wife, and the White River Gardens, Incorporated, a corporation. Thereafter an amended complaint made S. Katsuno and wife, Yoshiko Katsuno, a minor, Nora Murphy, as guardian of Yoshiko Katsuno, and D. K. Welt and wife additional parties defendant.

The pleadings will not be referred to extensively for the reason that they are not assailed except as to four affirmative defenses of appellants, as follows:

(1)   That ch. 50, Laws of 1921, p. 156 [Rem. Comp.

Stat., § 10581], prohibiting alien ownership of land in Washington is in violation of § 3, Art. I, of the state constitution, in that it deprives the defendants of life, liberty and property without due process of law, and specially invoke the protection of that section;

(2)   That the statute is in violation of § 12, Art. I, of the state constitution, in that it grants to citizens and classes of citizens and corporations other than municipal, privileges and immunities which upon the. same terms do not equally belong to all citizens and corporations, and specially invoke the protection of that section;

(3)   The statute is in violation of § 1 of the fourteenth amendment to the Federal constitution, in that it denies privileges and immunities to citizens of the United States and deprives defendants of life, liberty and property without due process of law, and denies to defendants the equal protection of the law, and specially invoke the protection of that amendment;

(4)   They allege that the chapter was in violation of the existing treaty between the United States and the Empire of Japan, and specially invoke the protection of the treaty.

The court sustained a demurrer to the above affirmative defenses.

The eighteen errors alleged by appellants devolve principally upon questions of fact in making findings of fact and refusing findings of fact requested by appellants, and on the conclusions of law and judgment on the facts as found by the court. The eighteenth error, which we will notice first, is upon the sustaining of the demurrer to the affirmative defenses of appellants.

The first affirmative defense is untenable under our decision in *State v. O'Connell,* 121 Wash. 542, 209 Pac. 865.

The second affirmative defense as to the article and section of the state constitution prohibiting discrimination between citizens, of course, has no application to aliens who are not protected by that constitutional provision, and therefore is not available to appellants.

The third affirmative defense has been decided adversely to the contention of appellants by the supreme court of the United States in *Terrace v. Thompson,* 263 U. S. 197, involving the same legislation.

The fourth affirmative defense, that the act is in violation of the treaty between the United States and Japan, has also been decided in *Terrace v. Thompson, supra.*

The trial court, among others, made the following findings of fact, to which appellants excepted:

"That on or about the 11th day of February, 1919, by contract recorded in Vol. 1045 of Deeds at page 440, in the office of the auditor of King county, D. K. Welt contracted to sell said land to one A. I. Maltby.

"That on or about the 11th day of February, 1919, said A. I. Maltby contracted by a contract filed for record with the auditor of King county in Vol. 1946 of Deeds, at page 440, to sell said land to Alfred T. White for the consideration of fifteen thousand dollars ($15,-000.00), of which the sum of five thousand dollars ($5,000.00) was then and there, paid, the balance to be paid at the rate of two thousand dollars ($2,000.00) per year on the 11th day of each February thereafter until the entire purchase price was paid, said deferred payments to draw interest at the rate of 6½% per annum; that the five thousand dollars ($5,000.00) paid by said Alfred T. White at the time of making of said contract was furnished by the defendant S. Katsuno, and Wayo Katsuno, his wife; that thereupon the said S. Katsuno and Wayo Katsuno, his wife, took possession and went into occupation of said land and ever since have been in full and complete possession and occupation of said land enjoying the full use and benefit thereof.

"That thereafter the White River Gardens Inc., a corporation, was organized with a capital stock consisting of two thousand (2,000) shares of the par value of ten dollars ($10.00) each, of which nineteen hundred ninety-seven (1,997) shares were issued to the defendant S. Katsuno; one (1) share to said Alfred T. White, one (1) share to one Ralph H. Higgins, and one (1) share to one U. G. Murphy.

"That on September 18, 1919, said Alfred T. White assigned the contract hereinbefore mentioned to said corporation, the White River Gardens Inc.; that there was no financial consideration from said corporation to said Alfred T. White for said assignment.

"That there has been paid on account of the deferred payments under said contract, the sum of sixty-one hundred dollars ($6,100.00) all of which money was paid from the proceeds of crops raised upon said land, and there now remains due on account of said contract the sum of thirty-nine hundred dollars ($3,900.00) and accrued interest.

"That the defendant, S. Katsuno, claims to have advanced to the White River Gardens, a corporation, or paid to said corporation, on account of the purchase price for said nineteen hundred ninety-seven (1,997) shares of capital stock of said corporation, at various times further sums aggregating thirteen thousand two hundred and twenty-two dollars and thirty cents ($13,222.30), which money was used to build certain houses on said land, and to purchase motor vehicles, farm tools and implements, live stock and other personal property for use on said farm, which said sums were entered on the book of said corporation, introduced as exhibit 'S' on page 4 thereof; making a total of eighteen thousand two hundred and twenty-two dollars and thirty cents ($18,222.30) claimed to have been paid by said S. Katsuno for said nineteen hundred and ninety-seven (1,997) shares of capital stock of said corporation.

"That on or about the 17th day of May, 1921, the defendant S. Katsuno assigned the 1997 shares of the capital stock of said White River Gardens Inc., a corporation, hereinbefore mentioned as issued to him, to his minor child, Yoshiko Katsuno. The original certif-

icate of said stock was surrendered and a new certificate issued by the corporation to said Yoshiko Katsuno for said 1997 shares. That no consideration passed between said parties at said time, but that the defendant S. Katsuno, whose full name is Shoichiro Katsuno, and his wife, Wayo Katsuno, executed and acknowledged on said 17th day of May, 1921, a written assignment of said 1997 shares to said minor Yoshiko Katsuno for the expressed consideration of love and affection. That on said 17th day of May, 1921, said Alfred T. White surrendered his one share of capital stock, receiving no financial consideration therefor, and said Ralph H. Higgins, surrendered his one share of capital stock, receiving no financial consideration therefor, and a certificate of one (1) share of stock was issued to the defendant Nora Murphy and a certificate of one (1) share of stock was issued to the defendant S. Katsuno; that theretofore said Alfred T. White had been secretary of said corporation and one of the trustees thereof, but had performed no duties except to attend periodical meetings of the board of trustees; that thereafter the defendant S. Katsuno, as president and manager of said corporation and one of its trustees, had full control of the affairs of said corporation including the management of the land hereinbefore described; that the defendant Nora Murphy, guardian of said minor Yoshiko Katsuno, held the aforementioned one (1) share of stock in order to qualify her as a trustee and as secretary of said corporation and kept such books of said corporation as were thereafter kept, making entries therein in accordance with the direction of and reports and statements by the said defendant S. Katsuno; that said S. Katsuno had full control of the financial affairs of said corporation and of the management of the farming industry conducted on the land hereinbefore described.

"VII.

"That such interest as was acquired and held by the defendant Alfred T. White and thereafter by assignment transferred to the defendant, the White River Gardens Inc., a corporation, was held by said Alfred T. White, and said White River Gardens Inc., a corpora-

tion in trust for the use and benefit of the defendants S. Katsuno and Wayo Katsuno, his wife, who were at all times the true owners of said contract subject to the provisions of the constitution and statutes of the state of Washington with reference to aliens holding and owning land within the state of Washington, and the taking of said contract in the name of Alfred T. White, and the holding of the same in the name of the White River Gardens, Inc., a corporation, was for the purpose and with the intent on the part of said defendants S. Katsuno and Wayo Katsuno, his wife, to hold said land in evasion and contrary to the terms and provisions of the constitution and statutes of the State of Washington, and said defendants Yoshiko Katsuno, a minor, and Nora Murphy, guardian of said minor, have no right, title or interest in and to said land by virtue of the contracts hereinbefore referred to."

On these and other findings, the court adjudged the land in question to be agricultural lands, used and suitable for general farming purposes only, and entered a decree to the effect that the minor Yoshiko Katsuno, and Nora Murphy, guardian of said minor, have no right, title, claim, lien or interest in and to the land or any part thereof; and that the right, title and interest in and to the land held by the White River Gardens, Incorporated, a corporation, S. Katsuno and Wayo Katsuno, his wife, be escheated to the state of Washington; and that all the right, title and interest of the defendants White River Gardens, Incorporated, a corporation, S. Katsuno and Wayo Katsuno, his wife, in and to the above described property of whatsoever kind or nature is forfeited to and belongs to the state of Washington, and that the state of Washington is entitled to the property and the whole thereof described in this action, excepting the interest of the defendants D. K. Welts and Jane Doe Welts, his wife, and the title is hereby declared forfeited to the state of Wash-

ington, subject to the interests of the defendants Welts and wife.

Appellants state that the errors claimed may all be grouped together and discussed in one proposition, namely, that there not only is no evidence whatever that Katsuno and wife had' any interest in the land in controversy, but, on the contrary, that the evidence is conclusive that the corporation owned whatever interest is created in the land by the contract from Maltby to White which was assigned to the corporation.

It is admitted that the legal title to the land is in the defendant Welt and is subject only to Welt's contract to sell same to Maltby, and Maltby's contract to sell the same to White; that White and wife transferred that contract to the White River Gardens, Incorporated, and that it has never been transferred by that corporation. It appears that Katsuno paid $18,222.50 cash to the corporation, for which was issued to him 1997 shares of the capital stock of that corporation, which he accepted in full payment of that sum of money; that he transferred all the shares of stock to his minor daughter, defendant in this action, and it is claimed that neither he nor his wife have, or ever had, any interest of any kind in the land, and that since the organization of the corporation and his transfer of his shares of stock to his minor daughter, he has never claimed any interest of any kind, name or nature in the corporation. Katsuno claimed that, subsequent to his transfer of the shares of stock in the corporation to his daughter, he never claimed nor received anything from the corporation except his wages for his services as manager of the corporation.

In addition to the findings heretofore set out, to which exceptions were taken, the trial judge gave a

memorandum opinion in the case wherein, among other things, he stated:

"While Katsuno states he was purchasing the land for his child, his action speak louder than his words, to the contrary. It is admitted that White purchased the land with his money and for him. I believe the evidence warrants me, and I will make a finding that the corporation was formed by him so that he would and did have the exclusive control of the land and received the profits from it; that the assignment of the stock to the daughter was induced by the passage of the 'Alien' act of 1921, and that such assignment did not in law or in fact change the status of the interest in the land, which at all times and now is, though standing in the name of the corporation, really owned by the Katsunos, contrary to our constitution and statutes, and is subject to escheatment to the state, and I will decree the same so escheated."

Another circumstance was alluded to by the trial judge, as follows:

"One year, as shown by the book of account, a profit of $1,500 was made, which went to Katsuno, though he afterwards made the explanation that this money did not in fact belong to him but was used to repay a loan he had made from a countryman to carry on his farming operations. The book of account does not show a profit for any other year, but, as Katsuno furnished all the items that went in the book, the wonder is that it showed a profit for even that one year. Whether there were profits or not, neither the minor nor the government participated in them."

Appellants argue that the ownership of the majority of the capital stock of the corporation being in an American citizen at the time this action was commenced, the state cannot recover.

The state proceeded upon the theory that no subterfuge, however skillfully concealed, which results in giving to an alien the right to control, possession, use, and the enjoyment of rents, issues and profits of land

will be permitted to thwart the established policy of the state with reference to alien ownership of land; and that the forms gone through with in this case by the defendants are nothing more than a pretence, and the ownership of the stock of the corporation by the minor an empty form; that the land is, and has always been under the control and dominion of the alien, and that the issues and profits thereof inure to him.

The matter before us as to the fraud is chiefly a question of fact. While it is true, as asserted by appellants, that fraud can never be presumed and must be proven by clear and convincing evidence, it is, nevertheless, still a question of fact. Appellants vigorously argue that the evidence in this case is not clear and convincing, and that the findings made by the trial court are not supported by such evidence. The evidence was, however, sufficient to satisfy a careful and experienced trier of the facts that the arrangement made in this matter was a mere pretence. The witnesses were before the trial judge, who observed their demeanor on the stand and heard and weighed their testimony.

We can find in the record before us no facts or circumstances to justify us in disturbing the findings made by the trial court. Since the findings support the conclusions of law and the judgment, they must be and are affirmed.

TOLMAN, C. J., FULLERTON, MACKINTOSH, and MITCHELL, JJ., concur.