[No. 19810.  Department Two.  July 16, 1926.]

THE STATE OF WASHINGTON, *Appellant*, v. GEORGE MOTOMATSU *et al., Respondents*.[1]

[1] STATUTES (78)—TIME OF TAKING EFFECT—CONSTITUTIONAL PROVISIONS—ALIEN LAND LAW. In view of the seventh amendment to the constitution, Art. 2, § 1, providing that no act, bill or law subject to referendum shall take effect until ninety days after the adjournment of the session of the legislature at which it was enacted, the alien property law, Rem. Comp. Stat., § 10581, did not take effect until June 8, 1921.

[2] ALIENS (3)—REAL PROPERTY—CONSTITUTIONAL AND STATUTORY RESTRICTIONS. Where an alien acquires a ten year leasehold in lands two days prior to the taking effect of the alien property law, his rights are not affected by that act and cannot be escheated to the state.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered October 10, 1925, upon findings in favor of the defendants, in an action to escheat a leasehold interest in lands held by aliens, tried to the court. Affirmed.

*Ewing D. Colvin*, for appellant.
*Guie & Halverstadt*, for respondents.

PARKER, J.—The state commenced this action in the superior court for King county, seeking a decree forfeiting and escheating to the state a leasehold interest in certain land situated in that county held by the alien defendants, Motomatsu and wife. A trial upon the

[1]Reported in 247 Pac. 1032.

merits resulted in judgment denying to the state the relief it prayed for, from which it has appealed to this court.

Respondents, Motomatsu and wife, are citizens and subjects of Japan and not citizens of the United States. On June 6, 1921, they entered into a written lease contract with one Joyce and wife, duly evidencing the acquiring from them of a leasehold interest in certain land owned by them situated in King county, for a term of eleven years and nine months, to commence June 1, 1921, and ending February 28, 1933. The question to be answered is, as to whether or not such an interest in land acquired by respondents on that date is subject to forfeiture and escheat to the state under our constitutional and statutory prohibitions against alien land ownership. We shall assume that the land in question is not of that character which is exempt from the prohibitions against alien land ownership.

In *State v. Natsuhara*, 136 Wash. 437, 240 Pac. 557, we held, in harmony with our previously expressed views, that a leasehold interest for a period of ten years acquired by an alien in 1916, prior to the enactment of chapter 50, Laws of 1921, p. 156 [Rem. Comp. Stat., § 10581], was not, after the passage of that act, subject to forfeiture and escheat to the state as being in violation of our constitutional and statutory prohibitions against alien ownership of land; this, upon the theory that a ten-year leasehold interest was not such an ownership in land as came within the constitutional and statutory prohibitions existing prior to the enactment of chapter 50, Laws of 1921, p. 156, and, the leasehold interest becoming vested prior to that enactment, the rights of the lessee under the lease were not impaired thereby.

Chapter 50, Laws of 1921, p. 156, passed the house February 25, 1921; passed the senate March 2, 1921;

was approved by the governor March 8, 1921; and, containing no emergency clause and no referendum being demanded thereon, became effective on June 8, 1921, two days after the execution of the lease contract by which respondents acquired their leasehold interest, which the state here seeks to have forfeited and escheated to it. We shall assume, for argument's sake, that the terms of this new act are such that a leasehold interest of the nature and extent here in question would be subject to forfeiture, if executed after the full enactment and taking effect of that act; that is, that the terms of that act are prohibitive of the acquiring of such a leasehold interest in land in this state by an alien.

[1] So our problem ultimately becomes this: Had chapter 50 of the Laws of 1921, p. 156, *supra*, become fully enacted and effective, in the sense that the leasehold interest acquired by respondents on June 6, 1921, became subject to forfeiture and escheat by virtue of its provisions. This calls for inquiry into our constitutional legislative process in the enactment of laws. If chapter 50 of the Laws of 1921, p. 156, actually became fully enacted and came into existence as a law prior to June 6, 1921, there might be some room for arguing that this leasehold interest of respondents would be subject to escheat, upon the act going into effect at the expiration of ninety days following its passage by the legislature and its approval by the governor.

But we think chapter 50 of the Laws of 1921 not only did not take effect as a law until June 8, 1921, but that it was not even fully enacted until June 8, 1921; this, because of the very nature of the constitutional legislative process existing in this state. It is to be remembered that, since the adoption of our in-

itiative and referendum constitutional amendment in the year 1912, the legislative power does not reside solely in that representative body we call the legislature; and that, when that body passes an act, other than an appropriation bill, such act does not become a law in any sense, in the absence of an emergency clause therein so declaring, until the expiration of the ninety days within which the people, by appropriate petition, may demand a referendum thereon; and, if such a petition be timely filed, then not until an approving vote is had upon such referendum. This, we think, is rendered plain by the following language of art. 2, § 1 of the seventh amendment to our state constitution:

"Legislative powers, where vested.—The legislative authority of the state of Washington shall be vested in the legislature, consisting of a senate and house of representatives, which shall be called the legislature of the state of Washington, but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature, and also reserve power, at their own option, to approve or reject at the polls any act, item, section or part of any bill, act or law passed by the legislature.

"(a)   Initiative: . . .

"(b)   Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, either by petition signed by the required percentage of the legal voters, or by the legislature as other bills are enacted. Six per centum, but in no case more than thirty thousand, of the legal voters shall be required to sign and make a valid referendum petition.

"(c)   No act, law, or bill subject to referendum shall take effect until ninety days after the adjournment of the session at which it was enacted. . . .

"(d) . . . Referendum petitions against measures passed by the legislature shall be filed with the secretary of state not later than ninety days after the final adjournment of the session of the legislature which passed the measure on which the referendum is demanded. The veto power of the governor shall not extend to measures initiated by or referred to the people. . . . . Any measure initiated by the people or referred to the people as herein provided shall take effect and become the law if it is approved by a majority of the votes cast thereon: Provided, that the vote cast upon such question or measure shall equal one-third of the total votes cast at such election and not otherwise. Such measure shall be in operation on and after the thirtieth day after the election at which it is approved. . . ."

Thus, we think, it becomes clear that the legislative will of the sovereign state did not become fully evidenced in favor of the passage of chapter 50, Laws of 1921, p. 156, until the expiration of ninety days after the adjournment of the legislative session at which that act was passed; that is, until June 8, 1921. Up to that time the law of our state remained wholly unchanged, touching the rights of respondents to acquire the leasehold interest here in question. Up to that time that act was still in process of final enactment, as much so as when an act passed by the legislature is still in process of final enactment, while awaiting the governor's action during the time limit prescribed for his approval or disapproval of the act. During that ninety-day period that act was awaiting the approval of the people. It became then, and not until then, a law by virtue of the failure of the people to seek a referendum thereon, just as an act becomes a law by virtue of the failure of the governor to act thereon within the prescribed period for exercising his veto power with reference thereto. Our decisions in *State ex rel. Atkinson v. Northern Pac. R. Co.*, 53 Wash. 673, 102 Pac. 876,

17 Ann. Cas. 1013; *State v. Paul*, 87 Wash. 83, 151 Pac. 114, and *Skidmore v. Clausen*, 116 Wash. 403, 199 Pac. 727, lend support to this conclusion.

[2] We are of the opinion that, respondents having acquired their leasehold interest at a time when it was lawful for them to do so, their rights under their lease are not impaired by the enactment of chapter 50, Laws of 1921, p. 156, *supra*.

The judgment is affirmed.

TOLMAN, C. J., MACKINTOSH, MITCHELL, and ASKREN, JJ., concur.