[No. 24506. Department One. August 7, 1933.]

LEW YOU YING, *Appellant,* v. LEW G. KAY *et al.,*
*Respondents.*[1]

[1]Reported in 24 P. (2d) 596.

*Edward H. Chavelle,* for appellant.

*Moore, Higgins & Magee,* for respondents.

Holcomb, J.—This appeal is from a judgment of dismissal with prejudice upon sustaining a demurrer to appellant's amended complaint, upon which he elected to stand. The sufficiency of the pleadings is the only question to be determined.

The suit is brought by appellant on his own behalf and on behalf of the other legal heirs of his father, Lew Wa Hoo, deceased, to establish a resulting trust in and quiet title to the west half of lot five, block sixteen, Plat of Town of Seattle, King county, commonly known as D. S. Maynard's town plat, and also known as 212, 214 and 216 Washington street, Seattle, Washington.

The amended complaint alleges that, on August 23, 1921, one Wilhelm, an unmarried man, was the owner in fee simple of the property above described, and on that date Lew G. Kay, acting for and on behalf of Lew Wa Hoo, now deceased, the father of appellant, purchased for Lew Wa Hoo the above described property, and paid for the same with money furnished for that purpose by Lew Wa Hoo; that Lew G. Kay took title to the property in his own name for the use and convenience of Lew Wa Hoo; that the property was conveyed to Kay by one Wilhelm by warranty deed dated August 23, 1921, which was recorded in the office of the auditor of King county, Washington, on August 25, 1921. That, simultaneously with the purchase of the property, and as a part of the same trans-

action, and in pursuance of his agency in acting for Lew Wa Hoo in the purchase thereof, Kay and his wife, on or about August 24, 1921, executed a warranty deed of the property to a blank grantee and delivered it to Lew Wa Hoo; that appellant is informed and believes that the warranty deed made to a blank grantee was thereafter delivered by Lew Wa Hoo to Kay for the use of Lew Wa Hoo, to be delivered to him upon his demand.

That, thereafter, Lew Wa Hoo entered into possession of the property and occupied the same himself and by his tenants; that Lew Wa Hoo died on or about June 17, 1927. That, at the time of his death, Lew Wa Hoo was survived by his wife, Wong Shee, now deceased, and four children, all the issue of himself and his wife, as follows: a son, Lew You Ying, appellant; a daughter, Lew Gim You, defendant and surviving spouse of Lee Sing, deceased; a son, Lew You Fong, now deceased and survived by his wife Eng Shee and two children, Ton Hoy and Suey Kan; and a daughter, Lew Gim Song; that appellant is informed and believes that the following persons are all of the persons who are the legal heirs of Lew Wa Hoo who are now living and entitled to inherit his estate: Lew You Ying, Lew Gim You, Lew Gim Song, Ton Hoy and Suey Kan; that the defendants Lew Gim Song, Ton Hoy and Suey Kan are non-residents of the state of Washington; that the questions involved in this cause are of common and general interest to many persons and it is impracticable to bring them all before the court; that appellant prosecutes this action in his own behalf and in behalf of all other persons lawfully entitled to inherit from Lew Wa Hoo.

That Lee Sing was a man of considerable business ability, and Lew Wa Hoo placed the management of his affairs and his property, both real and personal,

in the hands of Lee Sing, the son-in-law; that Lee Sing assumed the management of his affairs and property and continued in the management and care thereof until the death of Lew Wa Hoo in 1927, and thereafter until the death of appellant's mother, Wong Shee, in 1929; she and the other heirs of Lew Wa Hoo not having objected to his so doing.

It is further alleged that Lee Sing, immediately following the death of Wong Shee, claimed to be the owner of all the property of Lew Wa Hoo, both real and personal, and continued to assert his ownership thereof to the exclusion of all the children of Lew Wa Hoo, except perhaps his wife, until the time of his death on or about July 18, 1930; that, following his death, his widow, Lew Gim You, and his administrator, Joe Cohn, have asserted and now assert and claim the exclusive ownership of the above described real property.

That Lee Sing was either given possession of the deed of conveyance to a blank grantee of the above mentioned real property by Lew Wa Hoo to better enable him to manage the property, or Lee Sing by some artifice induced Lew G. Kay to deliver the deed of conveyance into his possession; that, having procured possession of the deed, Lee Sing, without right or authority so to do, on or about October 8, 1929, wrongfully inserted or caused to be inserted in the deed his own name as grantee, caused the deed to be recorded, and ever after claimed to be the owner of the property; that the instrument was executed August 24, 1921 and recorded October 8, 1929, in the office of the auditor of King county.

It is then alleged that the heirs of Lew Wa Hoo are, in truth and in fact, and should be adjudged and declared to be, the real owners of the above described real property; that, upon the heirs of Lew Wa Hoo

being ascertained by the court, the court should appoint a commissioner to do all acts necessary to be done to vest the legal title of the property in the heirs of Lew Wa Hoo; that the heirs and representatives of Lee Sing should be adjudged to hold the legal title to the real estate as trustees for the heirs of Lew Wa Hoo, and should be required to convey to them the property; and that, as against all the world, title to the property should be quieted in the heirs of Lew Wa Hoo.

An allegation is then made that, in addition to the known heirs of Lew Wa Hoo and the administrator of Lee Sing, all other persons or parties unknown claiming any right, title, estate, lien or interest in the real estate described in the complaint are made parties for the purpose of determining such interest of them or either of them, if any, in and to the property. The prayer of the amended complaint follows the allegations.

Respondents demurred to the amended complaint upon the grounds: (1) That the court has no jurisdiction in the subject matter of the action; (2) that plaintiff has no legal capacity to sue; (3) that the amended complaint does not state facts sufficient to constitute a cause of action; (4) that the right of plaintiff to maintain the action has heretofore been fully adjudicated against them by the trial court; (5) that the action has not been commenced within the time limited by law; and (6) demur especially upon the ground that plaintiff is equitably estopped from maintaining this action by his laches as revealed by the allegations of his amended complaint.

The original complaint, to which a demurrer had been sustained, contained an allegation that, after Lew Wa Hoo had entered into the possession of the real property and occupied the same himself and by his

tenants for several years, he returned to China, of which country he was a native, to spend his declining years, and died there on or about June 17, 1927.

Although both the original and the amended complaint allege that appellant is a resident of the state of Washington and King county, there is no allegation that he is a native or a citizen of the United States.

There can be no question but that the amended complaint alleges facts sufficient, at least, to put respondents to their defense as to whether or not Lee Sing defrauded Lew Wa Hoo by taking title in himself in the real estate involved, and that, therefore, he, his heirs and representatives, would be held to hold title in trust for the heirs of Lew Wa Hoo, as trustees *ex malificio,* were it not for the question of alienage.

If there were anything in the complaint uncertain, or alleged in the alternative, as contended, such defect should have been attacked by a motion to make more definite and certain, which was not done.

Although appellant does not cite it, it is plain that the relief sought in this action is based upon the statute relating to actions for possession of and quieting title to real property, Rem. Rev. Stat., § 785 *et seq.;* and that appellant has the right to bring the action, because the question is one of common or general interest to many persons, and it is impractical to bring them all before the court, under Rem. Rev. Stat., § 190. *Perkins & Co. v. Diking District No. 3 of Island County,* 162 Wash. 227, 298 Pac. 462.

Since the action is one for the recovery of and quieting title to real estate, the governing statute of limitations is either Rem. Rev. Stat., § 156, granting ten years in which to commence an action after appellant's ancestor was alleged to have been in possession until he died in June, 1927; or § 159, subd. 4, the three-year limitation for relief upon the ground of fraud, the

allegation being that the fraud was not discovered until the recording of the deed to the premises, on October 8, 1929, with his name filled in, by Lee Sing. In either instance, the action was commenced well within the statutory period; so that it is not necessary to determine precisely which statute applies. There is no equitable laches shown on the face of the complaint which would estop appellant from maintaining his action, short of one or the other of the statutory periods of limitation.

 Respondents rely, not only upon the amended complaint, but upon the original complaint alleging the alienage of appellant's ancestor, and assert that the trial court was bound to take judicial notice of the original complaint so alleging.

That question is immaterial. Regardless of the alienage of appellant and his ancestor, Art. II, § 33, of our constitution provides that the ownership of land by aliens is prohibited in this state, "except where acquired *by inheritance,* under mortgage or in good faith in the ordinary course of justice in the collection of debts;" etc.

In pursuance of the constitutional provision, our statutes, Rem. Rev. Stat., §§ 10581 to 10595, were passed.

Section 10582 reads:

"ALIENS—RESTRICTIONS AS TO LAND. An alien shall not own land or take or hold title thereto. No person shall take or hold land or title to land for an alien. Land now held by or for aliens in violation of the constitution of the state is forfeited to and declared to be the property of the state. Land hereafter conveyed to or for the use of aliens in violation of the constitution or of this act shall thereby be forfeited to and become the property of the state."

Section 10584, Id., reads:

"LAND ACQUIRED BY ALIENS BY INHERITANCE, ETC. If hereafter an alien acquire land by inheritance or in good faith either under mortgage or in the ordinary course of justice in the collection of debts and, remaining an alien, hold the same for more than twelve years from the date title was so acquired or control or possession taken, the land shall be forfeited to the state."

It is thus manifest that appellant and those similarly situated, as alleged by him, have both a constitutional and statutory right to inherit, regardless of alienage.

The alien land statute, *supra,* was passed in 1921 and thereafter we decided many cases dealing with the effect thereof. In *State ex rel. Dunbar v. Shokuta,* 131 Wash. 291, 230 Pac. 166, in which the state sought to escheat the land of the defendant, it was held:

" . . . that if ownership is not in the alien at the time of the commencement of the action, no right to escheat exists. [Citing cases.] In the case last cited upon this question [*Prentice v. How,* 84 Wash. 136, 146 Pac. 388] it was said:

" 'The only person who could question Wong How's claim or title while he held either a ninety-nine year lease or a certificate of sale, was the state of Washington, it having authority to institute proceedings for a forfeiture. *Abrams v. State,* 45 Wash. 327, 88 Pac. 327, 122 Am. St. 914. No such proceedings were commenced by the state, and after Wong How conveyed to respondent, a native of the United States, the state of Washington itself could not maintain such an action against respondent.' "

In the *Abrams* case, *supra,* it was held that the state is the only party that can question an alien's right to hold real estate under the constitutional provision, *supra,* and that aliens are entitled to inherit real estate in this state from, by, or through ancestors, whether such ancestors be aliens or citizens, and that, the state having failed to forfeit title of the ancestor by pro-

ceedings in the nature of office found, at any time prior to her death, the real estate in controversy descended to her alien heirs, who were authorized to receive the same and became entitled thereto, upon which the state had lost the right to declare an escheat by forfeiture.

Prior to the decision in the *Abrams* case, *supra,* we had held in *Goon Gan v. Richardson,* 16 Wash. 373, 47 Pac. 762, that it was not competent for the mortgagor to show that the mortgagee was incapable of taking title to real estate. That could only be shown in a suit by the state. This followed a decision in *Oregon Mortgage Co. v. Carstens,* 16 Wash. 165, 47 Pac. 421, 35 L. R. A. 841. Cf. *State v. O'Connell,* 121 Wash. 542, 209 Pac. 865; *In re Fujimoto,* 130 Wash. 188, 226 Pac. 505, 39 A. L. R. 937; *State v. Kosai,* 133 Wash. 442, 234 Pac. 5; *State v. Hirabayashi,* 133 Wash. 462, 233 Pac. 948; *State v. Motomatsu,* 139 Wash. 639, 247 Pac. 1032. In some of the above cited cases, it is either held or assumed that the question of alienage can only be raised by the state in an action of office found to escheat the land.

Respondents also urge that it was incumbent upon appellant to present his matter to the court sitting in probate in the estate of Lee Sing for adjudication, inasmuch as all the property involved was duly inventoried in the estate of Lee Sing, being administered by the court, in its custody and that the lower court has no jurisdiction in an independent action. *In re Martin's Estate,* 82 Wash. 226, 144 Pac. 42, and *Coleman v. Crawford,* 140 Wash. 117, 248 Pac. 386, are cited to the effect that all questions concerning the ownership or right of possession of property, claimed by a person having an interest in the estate to be the property thereof, shall be tried and determined during the course of administration; and that the superior court sitting in probate, has full jurisdiction to try the

title to the land if that question is involved and the parties have been properly brought before the court.

It is true that, in accordance with those cases and others therein cited, the superior court, sitting in probate, has full jurisdiction to determine questions of title where all necessary parties are before it. That procedure, however, is not exclusive.

Appellant had the right under Rem. Rev. Stat., § 785, *et seq.*, and our decision in *Rohrer v. Snyder,* 29 Wash. 199, 69 Pac. 748, where the real property is in the actual possession of an adverse claimant, to bring an action to recover the possession in which the question should be litigated. Nor would a decree of distribution in a probate matter create a title or be binding on the owner who had no personal notice of and made no appearance in the proceeding. *Parr v. Davison,* 146 Wash. 354, 262 Pac. 959.

If appellant is the equitable owner of land the title to which was in the deceased, he has a right to his property without regard to administration. Where land is paid for with the funds of one person and title thereto is taken in the name of another, a resulting trust in such property may be established, and if established, enforced by the person whose money is thus applied, or, after his death by his heirs. *Reese v. Murnan,* 5 Wash. 373, 31 Pac. 1027.

"Where a person dies possessed of trust funds, such funds do not, by reason of the death of the trustee, become liable for the debts of his estate. The relation of the *cestui que trust* is not changed. The property still belongs to him. While the administrator is no doubt entitled to the possession of the trust funds, he is liable to account therefor to his principal either in his individual or representative capacity. . . . He is not bound to proceed in the execution of the trust, but must preserve the fund for those entitled thereto."

*In re Belt's Estate,* 29 Wash. 535, 70 Pac. 74, 92 Am. St. 916.

The last cited case is also authority to the effect that the superior court, sitting in probate, had no jurisdiction to determine the title of third parties claiming the fund; that it has jurisdiction to determine *prima facie* the fact whether or not the property belongs to the estate and is an asset thereof. Such adjudication is not binding upon any person afterwards claiming the property in another forum, but is for the purpose only of determining whether the administrator shall be forced to make an inventory thereof.

Without discussing at length other matters argued in the briefs, it is clear that the amended complaint, regardless of the alienage averred in the original complaint, states a *prima facie* cause of action against respondents sufficient to put them upon their defense. The lower court has jurisdiction of this independent action to establish the constructive trust and quiet title, and of the parties thereto. Appellant, being an alien friend and not an alien enemy, has the legal capacity to sue, even though he is an alien. 1 R. C. L., 824, § 36.

The order and judgment are reversed, and the cause reinstated for further proceedings in accordance herewith.

MITCHELL, STEINERT, and MILLARD, JJ., concur.

BEALS, C. J. (concurring)—I concur in the foregoing opinion, but desire to call attention to one phase of the case which was not discussed in the briefs, that is, the possible necessity for administration upon the estate of Lew Wa Hoo.

While it is true that, under the law of this state (Rem. Rev. Stat., § 1366), real property vests immediately in the heir upon the death of the ancestor, it has

never been held that, under Rem. Rev. Stat., § 785, referred to in the foregoing opinion, an heir may maintain an action for the possession of real estate without alleging that no necessity for administration of the estate of the ancestor exists.

The general rule is laid down in 18 C. J. 899, Title, Descent and Distribution, § 180; and is also discussed in 11 R. C. L. 261, Title, Executors and Administrators, § 296. See, also, *Youngs v. Youngs*, 16 S. W. (2d) (Tex. Civ. App.) 426. This rule was recognized by this court in the case of *Tucker v. Brown*, 9 Wash. 357, 37 Pac. 456.

In the case of *Collette v. Sarrasin*, 184 Cal. 283, 193 Pac. 571, the supreme court of California held that an heir might maintain an action for the purpose of having a deed executed by his ancestor declared to be a mortgage.

In view of the fact that the question suggested was not argued in this case, I express no opinion thereon.